[No. D049824. Fourth Dist., Div. One. May 31, 2007.]

TYRONE W., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

COUNSEL

Neil R. Trop for Petitioner.

No appearance for Respondent.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Katharine R. Bird, Deputy County Counsel, for Real Party in Interest.

OPINION

McINTYRE, J.—Tyrone W. seeks writ review of juvenile court orders bypassing family reunification services at disposition and setting a hearing to select and implement a permanency plan for his son, T.W., under Welfare and Institutions Code section 366.26. (All statutory references are to the Welfare and Institutions Code unless otherwise specified.) Tyrone contends the court

erred when it denied him reunification services under section 361.5, subdivision (b)(6) without finding he inflicted severe physical harm on T.W.'s sibling by act or omission.

We hold that section 361.5, subdivision (b)(6) requires the juvenile court to find that a parent inflicted severe physical harm on the child by act, omission or consent before it may deny reunification services to that parent under subdivision (b)(6). The Legislature did not intend subdivision (b)(6) to apply to deny reunification services to a negligent parent; rather, the parent must have been complicit in the deliberate abuse of the child. Identification of the parent who inflicted severe physical harm on a child is required when the evidence does not show both parents knew the child was severely injured or knew the child was being abused. We further conclude the court identified Tyrone as an offending parent when it sustained the amended jurisdiction petition under section 300, subdivision (j) alleging both parents inflicted severe physical abuse on T.W.'s sibling. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Tyrone W. and Camela W. (together, parents) had two children, T.W., now age 21 months, and Y.W. The parents were on active duty with the United States Navy. In September 2005, United States Navy colleagues reported Tyrone and Camela often argued, and Camela had been injured on several occasions during their altercations. In November, a military tribunal convicted Tyrone of two counts of striking Camela in the head with his fist. Colleagues also reported Camela told them Tyrone placed his hand over T.W.'s mouth and banged T.W.'s head against his crib.

The allegations of child abuse were referred to the San Diego County Health and Human Services Agency (Agency) for investigation. Camela asserted Tyrone never harmed T.W., then two months old, and denied she told her colleague that Tyrone abused T.W. The Agency concluded the allegation of physical abuse was unfounded and offered Camela voluntary services to address issues of domestic violence. Camela minimized the violence in the household, and she and Tyrone reunited when he was released from military custody. Their daughter, Y.W., was born on June 3, 2006.

During the evening of July 3, 2006, Tyrone and Camela had an argument. Tyrone left the home. Camela telephoned 911 and told the dispatcher that Tyrone hit and kicked her. When officers arrived, Camela refused to press charges. Around 3:00 a.m. on July 4, Camela went to Tyrone's hotel room with the children and asked him to return home with them, which he did.

Later that morning, Tyrone fed Y.W. from approximately 8:45 a.m. to 9:00 a.m. and placed the baby back in her crib. He went back to sleep. Camela awoke at 10:00 a.m. She did not check on the baby because it was not her shift to watch the children. When Tyrone checked on Y.W. at noon, he discovered she was not breathing and called for emergency assistance. Attempts to resuscitate Y.W. were not successful. The medical examiner suspected the cause of death was sudden infant death syndrome (SIDS).

Officers called to the home to assist with Y.W. observed Camela had a swollen left eye. She said she and Tyrone argued the previous night, but her injury was accidental.

On July 17, 2006, the Agency filed a petition under section 300, subdivision (b) alleging T.W. was at substantial risk of suffering serious physical harm or illness as a result of domestic violence between his parents in July 2006, and January and September 2005. The Agency sought an order temporarily detaining T.W. from his parents' custody, which the court granted. The Agency placed T.W. in foster care.

In August 2006 the medical examiner released the report of its investigation into Y.W.'s death. Y.W.'s death was not inconsistent with SIDS. However, the autopsy revealed the baby had fractures on eight posterior right ribs and had similar, but smaller, healing fractures on three posterior left ribs. Dr. Christopher Swalwell, the deputy medical examiner, opined Y.W.'s rib fractures resulted from "trauma inflicted by another person." The fractures were not directly related to the cause of death, officially described as "sudden unexplained death in infant with healing rib fractures." The medical examiner listed the manner of death as "undetermined." Because of reports of possible domestic violence in the household and Y.W.'s unexplained injuries, Dr. Swalwell considered the death "suspicious."

A child abuse expert, Dr. Marilyn Kaufold, estimated the injuries to Y.W.'s right ribs were approximately 10 to 14 days old. The condition of the three left posterior ribs suggested these fractures were older than those on the right, consistent with two to four weeks of healing. Dr. Kaufold opined the rib fractures were "likely indicative of child abuse" and did not occur from birth or natural disease.

In late August 2006, physicians conducted a full skeletal survey on 13-month-old T.W. His test results were normal.

After the medical examiner issued its report, the Agency filed an additional count to the petition under section 300, subdivision (e), later amended at the request of county counsel to section 300, subdivision (j), and to include both

parents. The court also granted county counsel's request to delete the phrase "and has suffered severe physical abuse by the parent and the parent knew or reasonably should have known that the person was physically abusing the child's sibling" from the petition. (§ 300, subd. (e).)

The final amended petition alleged Y.W. suffered severe physical abuse and damage inflicted nonaccidentally by the parents and there was a substantial risk T.W. would suffer severe physical abuse by the parents as defined by section 300, subdivisions (e) and (j). The Agency recommended the court deny both parents reunification services and set a hearing to select and implement an out-of-home permanency plan for T.W.

At the contested jurisdiction and disposition hearing, the court admitted the Agency's reports into evidence. The parents presented no affirmative evidence and did not cross-examine the social workers. The court found T.W. was a child described in section 300, subdivisions (b) and (j), and removed him from parental custody. In view of the parents' conduct and the severe injuries inflicted on Y.W., the court found it was unlikely T.W. could be safely returned to parental custody within a 12-month reunification period and it was not in T.W.'s best interests to offer reunification services to either parent. (§ 300, subds. (h), (i).) The court bypassed reunification services under section 361.5, subdivision (b)(6) and set a permanency plan hearing. (§ 366.26.)

Tyrone and Camela each filed a petition for writ review under California Rules of Court, former rule 38.1, now rule 8.452. On January 8, 2007, this court deemed the notice of intent filed by Camela to be abandoned, and dismissed her case. With respect to Tyrone's petition, this court issued an order to show cause and the parties waived oral argument.

DISCUSSION

A.

■ Family reunification services play a critical role in dependency proceedings. (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 563 [37 Cal.Rptr.3d 579].) Unless a specific statutory exception applies, the juvenile court must provide services designed to reunify the family within the statutory time period. (§ 361.5; 42 U.S.C. § 629a(a)(7); see *In re Alanna A., supra,* 135 Cal.App.4th at pp. 563–564.) The statutory exceptions to providing reunification services under section 361.5 have been referred to as reunification "bypass" provisions. (§ 361.5, subd. (b)(1)–(15); see, e.g., *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595 [110

Cal.Rptr.2d 679]; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 874 [101 Cal.Rptr.2d 187].) There is no general bypass provision; the court must find by clear and convincing evidence that one or more of the subparts enumerated in section 361.5, subdivision (b) apply before it may deny reunification services to a parent. (§ 361.5, subd. (b)(1)–(15); see also 42 U.S.C. § 671(a)(15)(D).)

The primary issues raised in this proceeding are whether section 361.5, subdivision (b)(6) applies to a parent who "reasonably should have known" the child was being physically abused and failed to prevent the abuse, and whether the subdivision requires the identification of the offending parent. Because of the arguments raised by the parties and the concerns expressed by our concurring colleague, we describe in detail the statutory scheme, including applicable case law, that permits the court to bypass reunification services under subdivision (b)(5) and (6) of section 361.5.

Section 361.5, subdivision (b)(5) authorizes the court to deny reunification services to a parent when the child has been brought within the jurisdiction of the court under section 300, subdivision (e), because of "the conduct of that parent." (§ 361.5, subd. (b)(5).) Section 300, subdivision (e), applies when "[t]he child is under the age of five years and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child."

When section 300, subdivision (e) applies to a parent, section 361.5, subdivision (c) prohibits the court from ordering reunification services for that parent unless "it finds that, based on competent testimony, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child . . . ." In considering whether reunification services are likely to be successful, the court may consider "[t]he fact that a parent or guardian is no longer living with an individual who severely abused the child." (§ 361.5, subd. (c).)

In interpreting the scope of the phrase "the conduct of that parent" in section 361.5, subdivision (b)(5), an appellate court held "the Legislature intended subdivision (b)(5) of section 361.5 to apply to the parent who, knowing the actual abuser, knows or reasonably should have known that the other person was physically mistreating the child, as well as to the parent who personally abuses his or her child." (*In re Joshua H.* (1993) 13 Cal.App.4th 1718, 1732 & fn. 4 [17 Cal.Rptr.2d 282] (*Joshua H.*).) The *Joshua H.* court specifically rejected the argument subdivision (b)(5) was limited to the parent whose

"conduct" was the actual cause of the child's physical injuries. In its analysis, the *Joshua H.* court relied in part on statutory language in section 361.5, subdivision (c) that permitted the court to consider whether the parent had separated from the actual perpetrator of the abuse. (*Joshua H., supra*, 13 Cal.App.4th at p. 1732.) Thus, under section 361.5, subdivision (b)(5), the court may deny reunification services to a negligent parent.

■ In contrast to section 361.5, subdivision (b)(5), section 361.5, subdivision (b)(6) applies when a "child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of. . . *the infliction of severe physical harm to the child [or] a sibling . . . by a parent . . . as defined in this subdivision*, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent . . . ." (§ 361.5, subd. (b)(6), italics added.)

A finding of "severe physical harm" may be based on, but is not limited to: "[D]eliberate and serious injury inflicted to or on a child's body or the body of a sibling or half-sibling of the child by an act or omission of the parent or guardian, or of another individual or animal with the consent of the parent or guardian; deliberate and torturous confinement of the child, sibling, or half-sibling in a closed space; or any other torturous act or omission that would be reasonably understood to cause serious emotional damage." (§ 361.5, subd. (b)(6).)

■ Section 361.5, subdivision (c) prohibits the court from ordering reunification for a parent who has inflicted severe physical harm on the child or the child's sibling by act, omission or consent (offending parent) under section 361.5, subdivision (b)(6) unless the court finds, by clear and convincing evidence, that reunification is in the best interests of the child. If the court denies reunification services to an offending parent under subdivision (b)(6), the court is required to read into the record the basis for a finding of the infliction of severe physical harm and must also specify the factual findings used to determine that the provision of reunification services to the offending parent would not benefit the child. (§ 361.5, subd. (i).)

■ In determining whether reunification services will benefit the child, the court is required to consider any information it deems relevant, including the following factors: (1) the specific act or omission comprising the severe physical harm inflicted on the child or the child's sibling; (2) the circumstances under which the abuse or harm was inflicted on the child or the child's sibling; (3) the severity of the emotional trauma suffered by the child or the child's sibling; (4) any history of abuse of other children by the

offending parent or guardian; (5) the likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision; and (6) whether or not the child desires to be reunified with the offending parent or guardian. (§ 361.5, subd. (h).)

The statutory requirements of section 361.5, subdivision (b)(5) and (6) are distinct. As we explain below, we believe the statutory language in section 361.5, subdivision (b)(6) is clearly stated, and does not authorize the court to deny reunification services to a negligent parent, that is, a parent who did not know the child was being physically abused or injured (although the parent should have reasonably known of the abuse or injury).

## B.

Tyrone contends section 361.5, subdivision (b)(6) requires the court to identify the parent who inflicted severe physical harm to the child, and argues the evidence does not support a finding he inflicted Y.W.'s injuries by act or omission. Tyrone relies on *In re Kenneth M.* (2004) 123 Cal.App.4th 16 [19 Cal.Rptr.3d 752] (*Kenneth M.*) in which the appellate court concluded the trial court erred when it denied the father reunification services under subdivision (b)(6) based on the finding that either the mother or the father of the injured child was responsible for the infliction of the child's severe physical injuries, but did not identify either parent as the actual perpetrator. (123 Cal.App.4th at p. 21.)

The Agency asserts Y.W. was injured while in her parents' care and argues that even if only one parent caused the child's injuries, the other parent knew or reasonably should have known of the abuse. The Agency contends section 361.5, subdivision (b)(6) should not be interpreted to require the court to identify which parent inflicted severe physical harm on the child and which parent committed an act of omission resulting in the child's injuries.

The Agency opines the statement in *Kenneth M.* regarding the necessity to identify a parent who inflicted severe physical harm on the child under section 361.5, subdivision (b)(6) is nonbinding dicta, and urges us to ignore our colleagues' conclusion as nonbinding and erroneous. Drawing an analogy to section 300, subdivision (e) and section 361.5, subdivision (b)(5), the Agency contends the definition of an offending parent under subdivision (b)(6) should include a parent who knew or reasonably should have known the other parent was physically mistreating the child and failed to intervene. (*Joshua H., supra,* 13 Cal.App.4th at p. 1732.)

We accept the holding that section 361.5, subdivision (b)(5) allows the court to deny reunification services to a negligent parent of a severely physically abused child under age five. (*Joshua H., supra,* 13 Cal.App.4th at p. 1732; see *Smith v. Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143, 1158 [51 Cal.Rptr.2d 700, 913 P.2d 909] [when courts have construed a statute and the Legislature thereafter reenacts that statute without changing its language, the Legislature is presumed to have been aware of and acquiesced in the judicial construction]; see also Historical and Statutory Notes, West's Ann. Welf. & Inst. Code (2007 supp.) foll. § 361.5.) However, we do not find it necessary to reexamine *Kenneth M.* (See *Joshua H., supra,* 13 Cal.App.4th at p. 1732; *Amber K. v. Superior Court* (2006) 146 Cal.App.4th 553, 562 [52 Cal.Rptr.3d 701] (*Amber K.*).) *Kenneth M.* did not examine the application of section 361.5, subdivision (b)(6) to a parent who inflicted physical abuse by omission or consent. (*Amber K., supra,* 146 Cal.App.4th at p. 562.)

We review whether section 361.5, subdivision (b)(6) applies to deny reunification services to a negligent parent, and discuss whether the court is required to specifically identify a parent who did not act to abuse the child (nonacting parent) before denying services to that parent under subdivision (b)(6).

Issues of law are reviewed de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### C.

■ Here, the Agency contends the nonacting parent "reasonably should have known" Y.W. was being physically abused and acted to prevent it, and his or her failure to prevent the abuse was an act of omission within the definition of section 361.5, subdivision (b)(6). Even were the evidence sufficient to establish that a nonacting parent "reasonably should have known" of the abuse, we conclude the Legislature did not intend subdivision (b)(6) to apply to deny reunification services to a negligent parent.

"The rules governing statutory construction are well established. Our objective is to ascertain and effectuate legislative intent. [Citations.]" (*City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034].) In determining legislative intent, we first look to the statutory language itself. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663

[3 Cal.Rptr.3d 390, 74 P.3d 166].) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

"The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Thus, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (*Moore v. Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32]; see also *Mejia v. Reed, supra,* 31 Cal.4th at p. 663.)

Section 361.5, subdivision (b)(6) defines "severe physical harm" as "deliberate and serious injury inflicted to or on a child's body . . . by an act or omission of the parent . . . or of another individual . . . with the consent of the parent." The word "inflict" means "to cause [severe physical harm] to be endured," and implies some action. (Webster's 11th New Collegiate Dict. (2006) p. 641; see § 361.5, subd. (b)(6).) The word "deliberate" suggests the infliction of physical harm must have been "[i]ntentional[,] premeditated[, or] fully considered." (Black's Law Dict. (8th ed. 2004) p. 459, col. 2.)

The inclusion of the words "deliberate" and "inflicted" in, and the omission of the phrase "reasonably should have known" from, section 361.5, subdivision (b)(6) indicates the Legislature did not intend the court to apply a standard of negligence when considering whether to deny reunification services to a parent under subdivision (b)(6). We presume the Legislature intended everything in a statutory scheme, and we do not read statutes to omit expressed language or to include omitted language. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 225–226 [33 Cal.Rptr.3d 337].) When " ' " 'a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted.' " ' " (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 595 [30 Cal.Rptr.3d 320], quoting *In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1186 [2 Cal.Rptr.2d 569].)

The other statutory provisions that apply to section 361.5, subdivision (b)(6) support our analysis. Section 361.5, subdivision (h)(1) directs the court to consider "[t]he specific act or omission comprising . . . the severe physical harm inflicted on the child or the child's sibling." Section 361.5,

subdivision (i) requires the court to state the basis for its finding of "the infliction of severe physical harm."

■ We do not believe section 361.5, subdivision (b)(6) applies to a parent who "reasonably should have known" of the abuse because that parent was not complicit in the infliction of physical harm by act, omission or consent. As defined in subdivision (b)(6), omission and consent both require actual knowledge, if not of the physical harm itself, then of another's abusive acts. We hold that subdivision (b)(6) applies to the parent or parents who inflicted severe physical harm to the child whether by act, omission or consent, and does not apply to a negligent parent. (See, *ante*, at p. 848; cf. *Kenneth M.*, *supra*, 123 Cal.App.4th at p. 21; *Amber K.*, *supra*, 146 Cal.App.4th at p. 562.)

## D.

Section 361.5, subdivision (b)(6) is not limited to the parent or parents whose act directly caused the child's injury. (*Amber K., supra*, 146 Cal.App.4th at p. 562.) Appellate courts have discussed the proper application of subdivision (b)(6) to deny reunification services to a parent who inflicted the child's injury by omission or consent. For example, in *Pablo S. v. Superior Court* (2002) 98 Cal.App.4th 292 [119 Cal.Rptr.2d 523] (*Pablo S.*), the reviewing court concluded that, in view of the parents' awareness of their child's constant pain and disfigured broken leg, their failure to provide medical attention to the child for two months constituted the infliction of serious physical injury by omission. (*Id.* at p. 301.)

Similarly, in *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741 [50 Cal.Rptr.2d 858] (*Deborah S.*), the reviewing court concluded the father inflicted serious physical injury on the child by omission or consent. The four-year-old child's injuries included a new fracture of his right elbow, an old ankle fracture, swelling and bruising to both sides of his face, a swollen right eye, two missing front teeth, multiple bruises in various stages of healing and scars on the child's legs, arms, stomach, chest, buttocks and face, and eight scalp lacerations. (*Id.* at pp. 744–745.) The nature and extent of the child's injuries, and the father's observation of the mother's acts of physical abuse, supported the conclusion the father inflicted serious physical harm on the child by omission or consent, and was properly identified as an offending parent within the meaning of section 361.5, subdivision (b)(6).

■ Here, in contrast to the children's injuries in *Pablo S.* and *Deborah S.*, Y.W.'s injuries were not visible and there were no obvious signs of injury. The record contains no evidence to support a finding that, if only

one parent inflicted serious physical harm on the child, the other parent knew about the abuse and either consented to it or failed to act to prevent it, thus allowing the abuse to continue. Y.W.'s injuries, although severe, were not obvious. There was no bruising or other marks on Y.W., and no reports that Y.W. had been in distress. She had recently had a well-baby pediatric visit. There is no evidence either parent witnessed the other physically abuse or mistreat the baby. Although Tyrone's history of domestic violence and Camela's repeated lies certainly raise suspicion, a reasonable inference may not be based on suspicion alone. (*People v. Perez* (1992) 2 Cal.4th 1117, 1133 [9 Cal.Rptr.2d 577, 831 P.2d 1159].)

■ We do not quarrel with the proposition that when the child's injury or injuries were obvious to the child's caretakers and they failed to act, the court is not required to identify which parent inflicted the abuse by act and which parent inflicted the abuse by omission or consent. In such a case, the evidence supports a conclusion that both parents knew the child was injured or being abused. (See, e.g., *Pablo S., supra*, 98 Cal.App.4th 292; *Deborah S., supra*, 43 Cal.App.4th 741.) However, where there is no evidence to show both parents knew the child was abused or injured, the court must identify the parent who inflicted the child's injuries before denying reunification services to that parent under section 361.5, subdivision (b)(6). (*Kenneth M., supra*, 123 Cal.App.4th at p. 21.)

### E.

Tyrone contends the evidence does not support a finding Y.W.'s injuries came within the meaning of "severe physical harm" defined in section 361.5, subdivision (b)(6), and argues the evidence is insufficient to support a finding Y.W.'s injuries were deliberately inflicted. Tyrone posits Y.W.'s injuries may have occurred accidentally as a result of a parent's inattention, inadvertence or ignorance while picking up or holding Y.W.

The Agency asserts the evidence clearly supports the finding Y.W.'s injuries resulted from abuse.

When a parent challenges a disposition order on the basis of insufficient evidence, we review the record in the light most favorable to the trial court to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on clear and convincing evidence. Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt. (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 694–695 [13 Cal.Rptr.3d 198]; *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426 [132 Cal.Rptr.2d 907].)

We reject Tyrone's argument that Y.W.'s injuries resulted from parental carelessness or ignorance. Tyrone and Camela were Y.W.'s only caregivers from the time of her birth on June 3, 2006, until her death on July 4, 2006. The record allows the trier of fact to reasonably infer the parents knew how to properly hold and handle a newborn. In September 2005 a social worker examined two-month-old T.W. She did not note any bruises or observe any risk factors (other than domestic violence) in the home to indicate the parents did not know how to care for or handle their first child. When Y.W. was born, Camela received instruction on newborn care before she left the hospital. At the time of her death, Y.W. was a well-developed, well-nourished child without visible injuries.

Dr. Kaufold explained posterior rib fractures in infants usually occur when an adult grips the infant tightly around the chest and his or her fingers pressure the infant's back near the spine with undue force. The different stages of healing of the two sets of fractures made it unlikely the injuries were inflicted accidentally. Dr. Swalwell opined the fractures to Y.W.'s ribs would not have occurred by handling or caring for the baby in an ordinary manner and resulted from "trauma inflicted by another person." Drs. Swalwell and Kaufold concluded that Y.W.'s rib fractures were "likely indicative of child abuse."

Tyrone argues the doctors' conclusions are tentatively worded and do not constitute clear and convincing evidence of deliberate injury. We disagree. Used in this context, "likely" is defined as "having a high probability of occurring or being true." (Webster's 11th New Collegiate Dict., *supra*, p. 721.) "Indicative" means serving as a sign or symptom. (*Id.* at p. 634.) Far from being tentative, the opinions of Drs. Swalwell and Kaufold support the finding, by clear and convincing evidence, Y.W.'s rib fractures resulted from a deliberate and serious injury inflicted by another person.

Keeping in mind the standard of proof imposed by section 361.5, subdivision (b), we conclude substantial evidence supports the finding Y.W. suffered severe physical harm inflicted by a parent within the meaning of section 361.5, subdivision (b)(6). (Cf. *In re Amy A.* (2005) 132 Cal.App.4th 63, 67 [33 Cal.Rptr.3d 298].)

F.

Generally, under section 361.5, subdivision (b)(6), the court will make "an express, on-the-record finding of . . . severe physical harm as a pre-condition to denying reunification under the subdivision, notwithstanding the existence

of an earlier jurisdictional finding on the same subject." (*In re Rebekah R.* (1994) 27 Cal.App.4th 1638, 1651 [33 Cal.Rptr.2d 265].) Here, the court made its jurisdictional findings under section 300, subdivisions (b) and (j) by clear and convincing evidence, the requisite standard of proof required to bypass reunification services under section 361.5, subdivision (b). (See § 355, subd. (a); *In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379 [97 Cal.Rptr.2d 746] [the standard of proof at the jurisdictional stage of the proceeding is a preponderance of the evidence].)

The parties, despite their arguments concerning the identification of the offending parent, do not consider the preclusive effect of the trial court's jurisdictional findings on this issue. The allegations of the jurisdiction petition under section 300, subdivision (j) were modified, without objection, to read: "On or about and between June 13, 2006 to June 20, 2006, the child's sibling, [Y.W.], who was under the age of five years, suffered severe physical abuse and damage, including 11 bilateral posterior rib fractures inflicted non-accidentally by the child's parents . . . ." The record clearly shows the court did not base its jurisdictional findings on allegations of negligence. (The court did not take jurisdiction of T.W. under § 300, subd. (e).)

The trial court identified "the parents" as the persons responsible for the deliberate acts that caused Y.W.'s rib fractures. Significantly, Tyrone does not challenge the jurisdictional findings of the trial court in this proceeding. " ' "If an order is appealable . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata." ' " (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1156 [11 Cal.Rptr.3d 129], quoting *In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1705 [34 Cal.Rptr.2d 345].)

Here, in contrast to the trial court in *In re Rebekah R., supra,* 27 Cal.App.4th at page 1652, the court adhered to the procedural requirements imposed when the court bypasses reunification services under section 361.5, subdivision (b)(6). The court specifically addressed the factors under section 361.5, subdivision (h). The court explicitly referred to its findings under section 300, subdivision (j), and read into the record its reasons for finding that reunification services would not benefit T.W., as required by section 361.5, subdivision (i). (*In re Rebekah R., supra,* 27 Cal.App.4th at pp. 1651–1652.)

■ We conclude the court's finding that the parents, Tyrone and Camela, inflicted nonaccidental and severe physical abuse on their infant daughter is sufficient to identify the offending parent within the meaning of section 361.5, subdivision (b)(6). (*Kenneth M., supra,* 123 Cal.App.4th at

p. 21; see also *Amber K., supra,* 146 Cal.App.4th at p. 562.) Further, substantial evidence supports the court's findings under section 361.5, subdivision (h) that the provision of reunification services to Tyrone would not benefit the child. (*In re S.G.* (2003) 112 Cal.App.4th 1254, 1260 [5 Cal.Rptr.3d 750].)

## DISPOSITION

The petition is denied.

Nares, J., concurred.

**BENKE, Acting P. J.,** Concurring.—I concur in the result reached by the majority. I write separately to express my disagreement with the majority's analysis and application of Welfare and Institutions Code[1] section 361.5, subdivision (b).

My colleagues hold section 361.5, subdivision (b)(6), cannot apply to cases where the parents have been negligent, that is, where the parents have unreasonably failed to protect their child from severe physical abuse. Rather, pointing to *Pablo S. v. Superior Court* (2002) 98 Cal.App.4th 292 [119 Cal.Rptr.2d 523], and *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741 [50 Cal.Rptr.2d 858], cases where the child's injuries were obvious and the parents failed to act, my colleagues conclude that to deny reunification services under subdivision (b)(6), parental omission must rise to a level where the parents knew of the abuse and failed to intervene. Relying upon *In re Kenneth M.* (2004) 123 Cal.App.4th 16, 21 [19 Cal.Rptr.3d 752], they then conclude that where such specific knowledge of abuse or pain and suffering does not appear on the record, there must be identification of the actual perpetrator of the physical abuse.

Applying its analysis to the case before us, the majority states the record is virtually devoid of evidence the parents knew the child was being beaten or was in pain, therefore it was necessary to name the actual perpetrator of the beatings. This identification, it urges, occurred at the time of the jurisdiction hearing where the trial court found both parents actually abused the child, and the failure to appeal that ruling precludes Tyrone W. from challenging the finding or the application of section 361.5, subdivision (b)(6).

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

Respectfully, in an admittedly complicated area of the law, I disagree on multiple levels with the majority opinion. I part company from my colleagues on the interpretation of section 361.5, subdivision (b)(6) and that section's relationship to the reunification bypass statutes. I also favor separation from the dicta in *In re Kenneth M.*, which states an actual perpetrator of abuse must be named before reunification services can be denied under subdivision (b)(6). Finally, as Tyrone points out, there is no evidence in the record of the jurisdictional or disposition hearings supporting a conclusion he was the actual perpetrator of the injuries Y.W. suffered. Thus, counsel for the parties, as well as the trial court itself, will likely be surprised to discover that notwithstanding the trial court's express determination it did not need to identify the actual perpetrator of the injuries Y.W. suffered, it nonetheless found both parents were indeed the actual perpetrators of physical abuse.

I

*Welfare and Institutions Code Section 361.5,*
*Subdivision (b)(6)*

Subdivision (b) of section 361.5 sets out 15 separate circumstances under which reunification services need not be provided to a parent or guardian. Under section 361.5, subdivision (b)(3), (4) and (5), a parent's negligence, standing alone, will support an order denying reunification services. Subdivision (b)(3) deprives a parent of reunification services where a child has previously been taken from the parents' home because of physical or sexual abuse and has been taken from the home on a second occasion because such abuse has recurred. There is nothing on the face of subdivision (b)(3) which requires the perpetrator be identified or the parent be more than negligent in failing to protect the child from the repeated abuse. Subdivision (b)(4) deprives a parent of services when the parent has caused the death of a child "through abuse or neglect." Plainly, by its terms subdivision (b)(4) requires no greater level of culpability than neglect. Under subdivision (b)(5), services are denied where a child under the age of five has suffered severe physical abuse within the meaning of subdivision (e) of section 300 "because of the conduct of that parent or guardian." As the majority points out, subdivision (b)(5), notwithstanding its limitation to "conduct of that parent or guardian," has been applied where a parent knew or should have known about abuse. (See *In re Joshua H.* (1993) 13 Cal.App.4th 1718, 1732 [17 Cal.Rptr.2d 282].)

Importantly, where a court finds a parent falls within the provisions of section 361.5, subdivision (b)(3) or (4), reunification services may not be ordered unless the court finds by clear and convincing evidence reunification is in the best interest of the child. (§ 361.5, subd. (c).) Where a parent is

found to be described by section 361.5, subdivision (b)(5), the court has even less power to provide services. Where subdivision (b)(5) applies, the court must not only find reunification is in the best interests of the child, in addition it must also find "those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent." (§ 361.5, subd. (c).)

In short, the Legislature believes that in the circumstances described in section 361.5, subdivision (b)(3), (4) and (5), a parent's failure to act when the parent knew or should have known about harm to a child *requires* an order denying services in the absence of additional findings. In this context, in which the Legislature has required that services be denied to parents who are negligent, it is difficult to find anything in the closely related provisions of section 361.5, subdivision (b)(6) which requires a higher standard of culpability. Such a higher standard is certainly not found in the express language of subdivision (b)(6).

Contrary to the majority opinion, section 361.5, subdivision (b)(6) does not restrict the term "severe physical harm" to "deliberately inflicted" injuries. My colleagues quite properly take pains to point out we must presume the Legislature intended everything in a statutory scheme and cannot omit any express language. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 225–226 [33 Cal.Rptr.3d 337].) Their analysis of subdivision (b)(6), however, omits the express language of subdivision (b)(6). The language which my colleagues fail to consider appears immediately preceding the words "deliberate" and "inflicted": "A finding of the infliction of severe physical harm, for the purposes of this subdivision, *may be based on, but is not limited to*, deliberate and serious injury inflicted to or on a child's body . . . by an act or omission of the parent or guardian . . . ." (§ 361.5, subd. (b)(6), italics added.) The phrase "may be based on, but is not limited to" entirely defeats my colleagues' suggestion the later use of the words "deliberate" and "inflicted" were in any manner intended to limit application of subdivision (b)(6) to actual perpetrators. Rather, read literally, the phrase "may be based on, but is not limited to" expressly permits the trial court to consider, in addition to deliberate acts, other circumstances where a parent's act or omission has resulted in serious injury.

The majority also fails to afford the term "omission" its ordinary and common meaning. "Omission" means "something *neglected* or left undone" or "apathy toward or *neglect* of duty." (Webster's Collegiate Dict. (11th ed. 2006) p. 865, italics added.) In using the word "omission" in section 361.5, subdivision (b)(6), the Legislature clearly intended that a parent's failure to protect a child from serious physical injury would permit a trial court to deny reunification services.

A literal reading of section 361.5, subdivision (b)(6)—that is, one which gives meaning to the phrase "may be based on, but its not limited to" and the word "omission"—is also suggested when section 361.5, subdivision (b)(6) is compared with the provisions of section 361.5, subdivision (b)(3), (4) and (5). As I have noted, denial of services is required under subdivision (b)(3), (4) and (5) unless the court finds the services are in the best interest of the child, and in cases where subdivision (b)(5) applies, the court also finds services will prevent further abuse or prevent detriment to the child. Thus, subdivision (b)(3), (4) and (5) contains a presumption services will not benefit a child if a parent is guilty of the conduct, including negligence, covered by the subdivision. Once the court finds the circumstances set forth in subdivision (b)(3), (4) and (5), it may deny services without making any further findings.

Section 361.5, subdivision (b)(6) is not nearly so harsh and provides parents with important procedural protections. Significantly, subdivision (b)(6) does not apply unless the court finds it will not benefit the child to pursue reunification. (§ 361.5, subd. (b)(6).) Thus, unlike section 361.5, subdivision (b)(3), (4) and (5), subdivision (b)(6) presumes that notwithstanding the parental conduct described in the subdivision, reunification services will benefit a child. Moreover, unlike the other provisions, services may be denied under subdivision (b)(6) only if the court considers the specific factors set forth in section 361.5, subdivision (i) and only after it puts its findings as to those factors in the record. (§ 361.5, subds. (h), (i).)

To summarize then, if a court finds negligence which is within the scope of section 361.5, subdivision (b)(3), (4) and (5), the court must presume services will not benefit the child and it may deny services without making any further findings. On the other hand, if the court finds the parental conduct described in section 361.5, subdivision (b)(6), it must presume services will nonetheless benefit the child and can deny services only if it makes specific findings on the record which show reunification services will not benefit the child. The varying presumptions employed by the Legislature and the requirement of express findings when subdivision (b)(6) is to be applied, clearly demonstrate the Legislature viewed the parental conduct encompassed in subdivision (b)(6) as relatively less hazardous to a child than the conduct encompassed in section 361.5, subdivision (b)(3), (4) and (5). Because the Legislature clearly believes the parental conduct described in subdivision (b)(6) poses somewhat less of a risk to children, it is simply not logical to find subdivision (b)(6) contemplates a higher level of parental culpability than section 361.5, subdivision (b)(3), (4) or (5). In short, the majority's interpretation of subdivision (b)(6) is contradicted by the express language of the statute and by comparison with the related provisions of section 361.5.

Finally, I note the majority's reliance on *In re Kenneth M.*, *supra*, 123 Cal.App.4th 16, for the conclusion that section 361.5, subdivision (b)(6),

requires the naming of the actual perpetrator of abuse. Dicta in *Kenneth M.* does indeed support the majority's position. The difficulty for me is that, respectfully, I do not believe the dicta in *Kenneth M.* is correct. It does not find support in the language or construction of subdivision (b)(6).

II

*Application of the Law to This Case*

My colleagues find that because Tyrone did not appeal the jurisdictional finding, he is bound by it. The majority opinion concludes that in finding jurisdiction, the trial court necessarily found the parents deliberately inflicted harm on Y.W. This analysis is unpersuasive because, respectfully, it seriously mischaracterizes the trial court's jurisdictional findings.

The agency's petition alleged jurisdiction over T.W. arose under section 300, subdivisions (j) and (e). In discussing the trial court's jurisdictional findings, the majority opinion makes no reference to the section 300, subdivision (e), allegation in the petition. This is interesting because jurisdiction under subdivision (j) is not possible without reference to at least one other substantive provision of section 300. Subdivision (j) only provides for jurisdiction over a child when the child's sibling has been neglected or abused within the meaning of one of the other substantive provisions of section 300. (§ 300, subd. (j).) In short, a finding of jurisdiction under subdivision (j) requires a finding under one of the other provisions of section 300 as to the sibling.

It follows that for purposes of applying the doctrine of res judicata, the trial court's finding under section 300, subdivision (j) included a finding under the other substantive provision of section 300 alleged in the agency's petition, subdivision (e). Subdivision (e) provides jurisdiction when a child under the age five has been severely injured by a parent "or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child." (§ 300, subd. (e).) Thus, in finding jurisdiction under section 300, subdivisions (j) and (e), the trial court did no more than find both parents knew or should have known about the abuse their daughter suffered. Because of the scope of section 300, subdivision (e), the trial court's jurisdictional finding simply cannot be used in the place of evidence that one or both of the parents deliberately inflicted injuries on Y.W.

Because the record will not support a finding the parents deliberately inflicted injury on their daughter, the trial court's order cannot be upheld under the majority's interpretation of subdivision (b)(6) of section 361.5. I would not grant Tyrone's petition but would instead uphold the trial court's order under a literal interpretation of the statute.