Filed 7/1/14  In re J.V. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J. V., A Person Coming Under the Juvenile Court Law. | B254901 |
| J. V., | (Super. Ct. No. CK99703) |
| Petitioner, | |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING.  Petition for Extraordinary Writ.  Carlos E. Vasquez, Judge.  Granted in part.

Ronnie Jade Cheung and Tamara Renee Dennis, for Petitioner.

No appearance for Respondent.

Law Office of Marlene Furth and Melissa A. Chaitin, for C. V.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Tracey F. Dodds, Deputy County Counsel for Real Party in Interest.

The child, J.V, has filed a mandate petition challenging an order denying the mother, C.V., reunification services pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(5). The child argues substantial evidence does not support a finding reunification services should be denied. In addition, the child argues the juvenile court's findings were insufficient to permit a denial of her reunification services. The mother joins in the child's arguments. We conclude there is substantial evidence to support the order denying reunification services. But, we conclude the juvenile court's findings were insufficient to support an order denying reunification services. As it appears the juvenile court may have misspoke, we grant the petition solely to allow the juvenile court to correct its findings or order the mother receive reunification services.

First, the child argues substantial evidence does not support a finding reunification services should be denied. While in the mother's custody, the child's femur was broken. Under these circumstances, reunification services may be denied pursuant to section 361.5, subdivision (b)(5) which states in part: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (5) That the child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian." Section 300, subdivision (e) states in part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (e) The child is under the age of five years and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child. For the purposes of this subdivision, 'severe physical abuse' means any of the following: any single act of abuse which causes physical trauma of sufficient severity that, if left untreated, would cause permanent physical disfigurement, permanent physical disability, or death; any single act of sexual abuse which causes significant bleeding, deep bruising,

---

[1]     Future statutory references are to the Welfare and Institutions Code.

or significant external or internal swelling; or more than one act of physical abuse, each of which causes bleeding, deep bruising, significant external or internal swelling, bone fracture, or unconsciousness; or the willful, prolonged failure to provide adequate food. A child may not be removed from the physical custody of his or her parent or guardian on the basis of a finding of severe physical abuse unless the social worker has made an allegation of severe physical abuse pursuant to Section 332."

The juvenile court denied the mother's request for reunification services pursuant section 361.5, subdivision (b)(5) in material part because of the child's fractured femur. We review the juvenile court's findings for substantial evidence. (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164; *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) Substantial evidence supports the juvenile court's finding. The child was initially detained after the discovery of a fracture to her femur. The detention report, prepared by a social worker, Mayra C. Gonzalez, relates: "[A s]evere [n]eglect referral was received from the Child Abuse Hotline due to [the] child . . . having an injury which appeared to be of nonaccidental cause. [Child Social Worker] Jesus Gomez responded to the referral and spoke to [m]edical personnel at Pomona Valley Hospital, including [registered nurse] Rochelle Denson. [The] mother brought [the] child . . . to the emergency room at Pomona Valley Medical Center and after being examined, it was discovered that there was a '[c]losed fracture on the child's right oblique femur.' It was further reported, that according to the mother, the child . . . fell from her bed onto the floor. The distance that she allegedly fell was approximately two to three feet. According to the reporting party, the injury was not consistent with the story that the mother provided." Dr. Cornelia Kaminsky, a physician at the hospital, described the injury: "Oblique right mid femoral shaft fracture as described. This would not exclude nonaccidental trauma. . . ."

Mr. Gomez interviewed Dr. Rosa Gidowski who treated the child. Dr. Gidowski said the mother made false statements and exhibited "totally detached behavior with not displaying any concerns or worries" about the child. Dr. Gidowski had "great concern" about the child's well-being. Ms. Gonzalez, the social worker who prepared the detention report wrote: "According to Dr[.] Gidowski, she initially [saw the child] on

3

October 24, 2012 and had done the failure to thrive workup and the blood results . . . were all normal at that time. [The mother] never came back for follow[-]up since then. On [May 9, 2013,] a heme test was done and it turned out that [the child] is [a]nemic and [the] mother was given a prescription for [i]ron. According to Dr[.] Gidowski, [the child's] weight remains way below the 3rd percentile even with the cast on. She stated that it has to be a strong force for [the child] to sustain a spiral fracture of the femur, not just by falling from a bed and she finds [the] mother's story not consistent with the injury. Dr. Gidowski was quoted as saying, 'This is just unacceptable. This is the scenario, yesterday [the] child was laying down with her cast, looked so pathetic, no eye contact and very skinny, was crying and was looking out at a wall, [the mother] not even interested; [the mother] is so detached and [the mother] lied to me." The mother was interviewed by a hospital social worker, Elizabeth Wilson. According to Ms. Wilson, the mother denied ever having been interviewed by Mr. Gomez. Ms. Wilson concluded that the mother was "'odd, eccentric'" and hesitant to provide background information.

After the child was released, the mother failed to bring the child back to the hospital for a scheduled appointment. As a result, Ms. Gonzalez made an unannounced home visit. Ms. Gonzalez wrote: "[The child] . . . appeared very thin and presented in a sullen state. [I] greeted [the] child and she did not make any eye contact with [me] and instead maintained fixated on [the] television. [The c]hild also avoided eye contact with [the] mother, even when [the] mother spoke to her." According to the mother's roommates, she can become frustrated with the children at times. According to Ms. Gonzalez, the mother had not regularly followed through on the child's medical appointments.

In addition, Dr. Carol D. Berkowitz, a pediatrics professor at the David Geffen School of Medicine at the University of California at Los Angeles examined the child's medical records. Dr. Berkowitz concluded: "[The child] had a spiral fracture of the midshaft of her right femur and . . . the preponderance of evidence is that this fracture did not occur as a result of a fall off a bed. A femur fracture is a serious injury that requires

4

medical attention to both reduce pain and prevent the subsequent development of a deformity."

At the adjudication hearing, Dr. Berkowitz testified on behalf of the Department of Children and Family Services (the department). Dr. Berkowitz reviewed medical records from the Pomona Valley Hospital as well as the Children's Hospital of Los Angeles. Dr. Berkowitz testified the child suffered from a complete spiral fracture of the mid shaft of the right femur. Dr. Berkowitz described a spiral fracture: "A spiral fracture is a fracture that has a twist to it. It would be at an angle to the bone and twisted around kind of like a spiraled staircase would have a twist to it." The fracture was caused by a "twisting force" applied to the femur. The fracture was "acute" which means it was sustained more recently than 7 to 10 days prior to the child being seen at Pomona Valley Hospital. The child was first seen on April 23, 2013, at the Pomona Valley Hospital. The tests Dr. Berkowitz reviewed were performed on the child on April 24, 2013. The amount of force was such that it would have required an adult to cause the child's injury. Dr. Berkowitz testified that the femur is the strongest bone in the body and therefore, "A child would not have been able to . . . cause[ ] that fracture."

Dr. Berkowitz testified concerning the cause of the injury asserted by the mother. As noted, the mother claimed to Ms. Denson, the registered nurse, that the child had sustained the injury after falling off a bed onto the floor. The mother claimed the child had fallen from a height of approximately two to three feet. Dr. Berkowitz testified that the nature of the child's broken femur was inconsistent with falling off of a bed. Dr. Berkowitz thought it was "very unlikely" that the child was injured in the manner asserted by the mother. Dr. Berkowitz testified, "A fall from the bed would not explain the injury that [the child] sustained." Dr. Berkowitz further testified, "If in fact [the child] was jumping up and down, jumping up and down and then fell off, it would be [possible her] leg twisted underneath [her] and she landed on it that the fracture could have been sustained in that way." In order to cause the type of injury sustained by the child, it would be necessary for 600 pounds of force to be inflicted.

5

However, Dr. Berkowitz had never seen a child sustain this type of injury by falling off of a bed. The only causes of the same injury she had personally seen resulted from trauma or child abuse or a youngster being struck by a car. Further, had the child not received treatment with a specific cast, it would more likely than not have led to a permanent deformity of the femur.

The foregoing constitutes substantial evidence to support the necessary findings under section 361.5, subdivision (b)(5). The nature of the injury as testified to by Dr. Berkowitz and the mother's deception constitutes substantial evidence to support a section 361.5, subdivision (b)(5) finding. (*L.Z. v. Superior Court* (2010) 188 Cal.App.4th 1285, 1292; *In re Kenneth M.* (2004) 123 Cal.App.4th 16, 20-21.) No doubt, there was evidence supporting a different view of the facts including that of Dr. Thomas Grogan. However, we are precluded from reweighing the evidence. (*L.Z. v. Superior Court*, *supra*, 188 Cal.App.4th at p. 1292; *In re E.H.* (2003) 108 Cal.App.4th 659, 669.)

Second, the child argues the juvenile court's findings did not support the denial of reunification services. The child correctly argues the juvenile court was obligated to apply the clear and convincing evidence standard to the section 361.5, subdivision (b)(5) issue. We agree. (*K.F. v. Superior Court* (2014) 224 Cal.App.4th 1369, 1386; see *In re Ethan C.* (2012) 54 Cal.4th 610, 616-617.) The department's contrary argument that a mere preponderance of the evidence standard applies has no merit. Section 361.5, subdivision (b) expressly requires use of the clear and convincing evidence standard. And section 361.5, subdivision (k) requires that the basis for the finding of the infliction of severe physical harm be read into the record. (*K.F. v. Superior Court*, *supra*, 224 Cal.App.4th at p. 1385; *Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 847.)

The juvenile court found as to two siblings that reunification services were in order. However, as to the child, after making that ruling, the juvenile court stated: "But as to [the child], the court does not -- it is not prepared to find by clear and convincing evidence that reunification would be in the best interest of the child or that it would be -- or that the services are likely to prevent reabuse or continued neglect or that failure to try reunification will be detrimental to the child because the child is closely and positively

6

attached to that parent. The court does not see that that criteria has been satisfied in this case." The juvenile court then adverted to evidence in the detention report: "There is also something else that I want to mention in the detention report with regard to this issue. In the detention report dated May 29, 2013, in the paragraph next to the second from the bottom, during an interview with Dr. Gidowski, the social worker notes that: [¶] 'Dr. Gidowski stated that the child was laying down with her cast. She looked so pathetic. No eye contact and very skinny, was crying and was looking at a wall. [The mother was] not even interested. [The mother] is so detached, and [the mother] lied to me.'" The juvenile court then concluded, "[U]nder the circumstances, the court cannot find that by a clear and convincing evidence that reunification would be in the best interest of the child . . . ."

We agree with the child that the foregoing is insufficient to support an order denying reunification services. However, the syntax, language, use of double negatives and nature of the findings leave open the distinct probability that the juvenile court merely misstated itself. The juvenile court intended to return separate findings as to the child which were different from those involving the siblings where reunification services were provided. Further, the juvenile court was moved, as any individual would be, by the extraordinary injury sustained by the child. Thus, upon remittitur issuance, the juvenile court may take up the question of whether it intended to find by clear and convincing evidence those matters specified in section 361.5, subdivision (b)(5) are true. The juvenile court remains free to make findings which require the provision of reunification services.

The mandate petition is granted to the limited extent that, upon remittitur issuance, the juvenile court may revisit its section 361.5, subdivision (b)(5) reunification services findings. In the event the juvenile court intended to deny reunification services as to the child, the necessary findings are to be made. The juvenile court retains the discretion to reconsider its denial of reunification services and make appropriate findings in that regard. The mandate petition is denied in all other respects.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


KRIEGLER, J.


MINK, J.[*]

---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.