Filed 8/24/15  In re J.Z. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re J.Z., a Person Coming Under the Juvenile Court Law. | C077701 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, | (Super. Ct. No. J37235) |
| Plaintiff and Respondent, | |
| v. | |
| D.Z., | |
| Defendant and Appellant. | |

Father Dwight Z. appeals the juvenile court's order denying him reunification services with the 21-month-old minor J.Z.  The juvenile court based this denial on the finding that (1) father was not the statutorily presumed father and paternity had not been determined (Welf. & Inst. Code, § 361.5, subd. (a));[1] and (2) father was incarcerated and

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

the provision of services would be detrimental to the minor (§ 361.5, subd. (e)).  Father contends he was the statutorily presumed father under the Family Code, and the juvenile court's "misunderstanding of the paternity scheme" calls into question its understanding of section 361.5, subdivision (e).  We find there was not sufficient evidence to support the juvenile court's denial of services under section 361.5, subdivision (a).  However, there was sufficient evidence to support the denial of services based on the finding that father was incarcerated and it would be detrimental to the minor to provide services.  Accordingly, we shall affirm the orders of the juvenile court.

### FACTUAL AND PROCEDURAL BACKGROUND

When law enforcement officers conducted a traffic stop of mother and her boyfriend, they found the minor in the car, unrestrained, with drugs in the car, and learned the boyfriend was a registered sex offender.  The Butte County Department of Employment and Social Services (the Department) filed a section 300 petition alleging mother had failed to protect the minor and father had left the child without any provision for support.  (§ 300, subds. (a) & (g).)  Mother reported Dwight was the minor's father.  Mother and Dwight were married in April 2011, and the minor was born in October 2012.  Mother stated Dwight was present at the minor's birth and was listed as the father on the birth certificate.

Father was arrested in August 2013 on burglary charges, again in August 2013 on drug charges, in October 2013 for failure to appear, and in May 2014 for receiving stolen property and vehicle theft.  At the time the Department filed the petition, father was incarcerated in Sutter County jail.  He had recently been sentenced to a term of four years and had additional charges pending.  The juvenile court found the allegations true and sustained the petition.

2

The findings and order after the detention hearing refer to father as the presumed father.[2] In the disposition report, the social worker reported the juvenile court had not yet made a paternity finding and recommended father not be offered reunification services. The social worker reported under section 361.5, subdivision (a), that Dwight had been named the alleged father, but there was no statutorily presumed father. The social worker also reported under section 361.5, subdivision (e)(1), that father was incarcerated and services would be detrimental to the minor. Father's sentence extended beyond the six-month reunification period for a child under three years old, and his release date was 15 months after the date for the six-month status review. The social worker noted the minor was 21 months old and would be four and a half years old when father completed his current sentence. Additionally, father had further charges pending that could increase his sentence. Father had not seen the minor for the seven months immediately preceding the petition, approximately one-third of her life. Prior to that, his time with the minor had been inconsistent as he had been in and out of jail. Father had significant problems that needed to be addressed before he could reunify with the minor, including a history of substance abuse and domestic violence. Resolving these problems would require significant time. The social worker recommended mother be offered services.

At the disposition hearing, father's counsel noted: "The report is—recommends that [father] not get services as an alleged father. I am not willing to set a contested hearing based on the very extreme likelihood of the Court following the recommendation. So on [father's] behalf, I will object to him being denied the reunification services without further testimony or evidence."

The juvenile court found there was not a statutorily presumed father, as paternity had not been determined. Separately, the court found father was incarcerated, and found

---

[2] There is no record of the juvenile court actually making this finding.

3

by clear and convincing evidence the provision of services to father would be detrimental to the minor.

**DISCUSSION**

I.

*Governing Statutes and Legal Principles*

Upon removal of a dependent child from parental custody, the juvenile court generally is required to order reunification services to assist the parent in ameliorating the problems that led to removal and facilitating the child's safe return to parental custody. (§ 361.5.)  Unless a specific statutory exception applies, the juvenile court must provide services designed to reunify the family within the statutory time period.  (§ 361.5; see *In re Alanna A.* (2005) 135 Cal.App.4th 555, 563-564.)

Despite the fundamental policy of seeking to reunify dependent children with their parents, the statutory scheme also contains narrow exceptions in recognition that in some circumstances, "attempts to facilitate reunification do not serve and protect the child's interests" and would be an exercise in futility.  (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474, 478.)  Where the parent is unlikely to benefit from reunification efforts, these exemptions from mandatory services further the purpose of the dependency law:  " '[T]o ensure the well-being of children whose parents are unable or incapable of caring for them by affording them another stable and permanent home within a definite time period.' "  (*In re Joshua M*. (1998) 66 Cal.App.4th 458, 474.)  Accordingly, if the juvenile court finds by clear and convincing evidence that one or more of the exceptions applies, it may deny reunification services to a parent.  (*Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 846.)

We review a juvenile court's findings under section 361.5 for substantial evidence. (*In re Harmony B*. (2005) 125 Cal.App.4th 831, 843.)  "In so doing, we presume 'in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all

4

conflicts in support of the order.'  (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.)"
(*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164.)

## II.

### *Statutorily Presumed Father*

Dwight contends he was a statutorily presumed father entitled to reunification services.  We agree Dwight was a statutorily presumed father.  Father also challenges the juvenile court's finding that paternity had not been determined as "almost certainly wrong."  As to the finding of paternity, we disagree.  There was no evidence in the record that biological paternity had been established.

"The provision of reunification services to a biological father is discretionary; the court '*may* order [such] services . . . if the court determines . . . the services will benefit the child.'  (§ 361.5, subd. (a), italics added.)"  (*In re Alanna A., supra,* 135 Cal.App.4th at p. 564.)  By contrast, "presumed fathers possess far greater rights than alleged or biological fathers," (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 596) and presumed fathers are *entitled to* reunification services.  (*In re Zacharia D*. (1993) 6 Cal.4th 435, 451.)

The only evidence before the juvenile court was that Dwight was married to mother when the minor was born.  Accordingly, he was the statutorily presumed father. (Fam. Code, § 7611, subd. (a).)  This statutory presumption may be rebutted by clear and convincing evidence.  (Fam. Code, § 7612, subd. (a).)  There was no evidence presented to rebut the presumption.  Accordingly, father is correct, there is not substantial evidence supporting the juvenile court's denial of reunification services under section 361.5, subdivision (a), based on the finding that there was no statutorily presumed father.

## III.

### *Incarcerated Parent and Services Detrimental to the Child*

In addition to, and separate from, determining father was not entitled to services under section 361.5, subdivision (a), the juvenile court denied father services under

5

section 361.5, subdivision (e).[3] Section 361.5, subdivision (e)(1), allows for the provision of services to incarcerated parents, but also includes an exception consistent with the recognition that in some circumstances, the provision of services to an incarcerated parent may not be in the child's best interest and may be an exercise in futility. Thus, "[i]f the parent or guardian is incarcerated, . . . the court shall order reasonable services *unless* the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations described in subdivision (a), and any other appropriate factors." (§ 361.5, subd. (e)(1), italics added.)

Here, the minor was 21 months old at the time of the disposition hearing. Accordingly, reunification services could not be provided past June 30, 2015, 12 months

---

[3] Contrary to father's claim, nothing in the record suggests the juvenile court relied on its mistaken finding regarding his status as a presumed father in reaching its conclusion that he was an incarcerated parent and services would be detrimental to the minor. Rather, the record suggests these were wholly independent grounds on which the juvenile court denied reunification services. Moreover, " 'that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19; *People v. Zapien* (1993) 4 Cal.4th 929, 976; *In re Sarah M*. (1991) 233 Cal.App.3d 1486, 1494-1495, disapproved on other grounds by *In re Chantal S*. (1996) 13 Cal.4th 196, 204.)

from the date the minor entered foster care. (§ 361.5, subd. (a)(1)(B).) At the time of the disposition hearing father was incarcerated. He was scheduled to be released on May 26, 2016, almost a year after the reunification period ended.[4] Father had not seen the minor in the seven months prior to her detention and, even before that, had been a sporadic presence in her life, as he was in and out of jail. In addition, to reunify with the minor, father would have to address both his history of domestic violence and substance abuse. These are problems that take a significant period of time to resolve. Accordingly, there was a limited parent-child bond, treatment was bound to be time consuming, and father would not be discharged from incarceration prior to the end of the reunification time limitations. This was substantial evidence supporting the juvenile court's finding that father was incarcerated and providing reunification services would be detrimental to the minor.

---

[4] Father makes a somewhat tortured argument that as a result of the passage of Proposition 47, almost three months after the disposition hearing, his release date *may* be sooner, because "*most* of [his] offenses seem to be either misdemeanors or qualifying felonies." But, we review the juvenile court's decision based on the facts and record as they stood at the time of the dispositional hearing. (See *In re Isayah C.* (2004) 118 Cal.App.4th 684, 701.) Furthermore, father's speculation as to the effect of Proposition 47 on his release date is not a legal basis for reversing the juvenile court's order.

**DISPOSITION**

The orders of the juvenile court denying father reunification services are affirmed.


         RENNER         , J.


We concur:


  HULL         , Acting P. J.


  MAURO         , J.