[No. E041287. Fourth Dist., Div. Two. Dec. 13, 2006.]

AMBER K., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
SAN BERNARDINO COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Real Party in Interest.

554

## COUNSEL

Friedman & Gebbie and Monica Cazares for Petitioner.

No appearance by Respondent.

Dennis E. Wagner, Interim County Counsel, and Phebe W. Chu, Deputy County Counsel, for Real Party in Interest.

## OPINION

**HOLLENHORST, Acting P. J.**—Petitioner Amber K. (mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 38.1(a), regarding her children, J.P., D.A., S.M., and D.L. (the children). Mother contends that the juvenile court erred in denying her reunification services under Welfare and Institutions Code section 361.5, subdivision (b),[1] and erred in finding that reunification was not in the children's best interest. We deny mother's writ petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2005, the San Bernardino County Department of Children's Services (DCS) filed section 300 petitions on behalf of the children. The petition of J.P., who was three months old at the time, alleged that he came

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). His petition specifically alleged that he had suffered serious physical harm due to mother's neglect and inability to provide regular care for him, as shown by his being underweight. The detention report further described J.P. as severely malnourished and suffering from "failure to thrive syndrome." The petition also alleged that mother suffered from a substance abuse problem and had a domestic violence history, and that J.P. was left without any provision for support since his father's whereabouts were unknown.[2]

At the time of the filing of the petitions, D.A. was four years old, S.M. was six years old, and D.L. was 13 years old. The petitions alleged that D.A., S.M., and D.L. (the older children) came within section 300, subdivisions (b), (g), and (j) (abuse of sibling). In addition to alleging the same supporting facts as J.P.'s petition, their petitions alleged that their father, David K. (father),[3] suffered from a substance abuse problem, had a domestic violence history, and was currently incarcerated. Their petitions also alleged that they were at risk of the same neglect that J.P. suffered.

At the detention hearing on January 28, 2005, the court found that there was a prima facie case established for detaining J.P. out of the home, and he was placed in the temporary care of DCS. The older children were detained with mother.

*Jurisdiction/Disposition Report and Hearing*

The social worker prepared a jurisdiction/disposition report recommending that J.P. be declared a dependent of the court and placed in out-of-home care, that mother be provided with reunification services, and that the older children remain in mother's custody with in-home court supervision. The social worker attached a case plan for mother that required her to participate in counseling, complete a parenting course and a child development course, and assure that all medical and dental appointments were met. The social worker noted in the report that mother completed a drug test on January 25, 2005, and the results were negative.

At a contested jurisdiction/disposition hearing on April 29, 2005, mother pled no contest to the allegations that J.P. was suffering from neglect, and that

---

[2] J.P.'s father, Tracy O., is not a party to this writ petition.

[3] Father is not a party to this writ petition.

she suffered from a history of domestic violence. The court found J.P. came within section 300, subdivisions (b) and (g), and that the older children came within subdivisions (b), (g), and (j). (The court made no finding as to the allegation of mother's substance abuse problem.) The court declared the children dependents of the court, placed J.P. in the custody and care of DCS, and ordered mother to participate in reunification services. As to the older children, the court ordered them to remain in mother's custody on a family maintenance plan. The court further ordered the social worker to prepare a case plan for father and to provide him with referrals upon his release from prison. The court also authorized monthly supervised visits at the DCS office between father and the children.

On May 26, 2005, the social worker informed the court that a case plan had been prepared for father, that father was released from prison on May 13, 2005, that father was previously charged with cruelty to children (Pen. Code, § 667.5), and that his parole terms prohibited him from having contact with children.

### Six-month Status Review

The social worker prepared a status review report in which she recommended that the court dismiss and discharge the family maintenance cases for the older children and return J.P. to mother for a 29-day visit. If the family remained stable during this visit, the social worker recommended that J.P. be returned to mother under a family maintenance plan. Mother had completed 40 hours of parenting classes, a child development class, and eight counseling sessions. The social worker recommended the 29-day visit to determine mother's ability to provide adequately for J.P. while still caring for the older children. On October 31, 2005, the court found that mother had made substantial progress in her case plan, approved the 29-day visit, changed J.P. to family maintenance status, and authorized J.P.'s foster parents to have unsupervised visitation. The court ordered all four children to remain as dependents of the court and ordered mother to participate in family maintenance services.

On December 20, 2005, the social worker filed an interim review report stating that DCS received multiple referrals alleging neglect and physical abuse. After investigating the allegations, the social worker concluded that the referrals were unfounded, but nonetheless changed her recommendation to

state that the older children should remain on family maintenance. Regarding father, the social worker reported that he did not wish to participate in his case plan since he could not see his children anyway, pursuant to his parole terms.

At a hearing on January 3, 2006, the court ordered the children to be maintained as dependent children in mother's custody. The court further ordered mother not to use corporal punishment against the children. At a continued hearing on January 24, 2006, the court ordered father to participate in reunification services and ordered supervised visitation at the DCS office. (Father's probation terms had been changed to allow him supervised visitation with the children.)

### 12-month Status Review

The social worker prepared a 12-month status review report recommending that the children stay in mother's home on a family maintenance plan and recommending the termination of father's reunification services. Father was arrested on March 6, 2006, for possession of illegal substances and drug paraphernalia. A contested 12-month review hearing was held on April 11, 2006, concerning father's services. (Mother's review was scheduled for later in April.) At the hearing, the social worker testified that on March 31, 2006, mother reported that her daughter, S.M., told her that father sexually molested her during Christmas break (Dec. 2005), when he was left unsupervised with the children in the home. Mother had allowed father to be unsupervised in the home without the social worker's knowledge. D.L. also reported that approximately seven years ago, father sexually molested him. The court terminated father's visitation and reunification services and ordered that there be no contact between father and the children.

### Family Maintenance Review and Subsequent Petitions

On April 18, 2006, the social worker filed a family maintenance review report recommending that the dependency and family maintenance case for J.P. be continued, and that the family maintenance cases for the older children be dismissed. The social worker was still investigating the sexual molestation allegations. She stated that mother was neglectful in allowing father to be unsupervised with the children, noting that despite her knowledge that father sexually abused D.L. seven years ago, she still allowed father to

have access to the children. In addition, the social worker reported that there was a referral alleging that mother allowed her current live-in boyfriend (the boyfriend) to inappropriately physically discipline the children. The social worker discovered that the boyfriend had an extensive criminal history, and requested that he leave immediately. Mother informed the social worker of her plans to move to North Carolina to marry the boyfriend and allow him to adopt the children.

On June 2, 2006, DCS filed amended section 387 and 342 petitions on behalf of J.P., and amended section 342 petitions and section 387 petitions on behalf of the older children. The section 387 petitions alleged that mother had a live-in boyfriend who slapped J.P. while in mother's care. J.P.'s section 342 petition alleged that he continued to suffer from neglect in his mother's care and was underweight, that mother failed to protect him from physical discipline by the boyfriend, and that he was at risk of sexual abuse since D.L. had been previously sexually abused by father, and mother allowed father to stay in the home unsupervised on December 27, 2005, against the conditions of his parole. S.M. was sexually abused as a result. The older children's section 342 petitions alleged that D.A. had been inappropriately disciplined by the boyfriend, that mother told the children to lie about the physical abuse, that mother failed to protect S.M. from being sexually abused by father on December 27, 2005, thus putting the other children at similar risk of abuse, and that mother failed to fill D.L.'s psychiatric medication prescription.

In the detention report, the social worker recommended that the children be removed from mother's custody and detained with DCS, and that mother be denied reunification services. The social worker also substantiated the allegations that, on December 27, 2005, mother allowed father to stay in the home for several days against the conditions of his parole. Mother knew that father had sexually abused D.L., as she filed a police report in 2003. The court detained the children in foster care.

*Jurisdiction/Disposition*

The social worker recommended that the court find the allegations to be true and that mother receive no reunification services. The social worker noted that mother left California to live with her boyfriend in Florida, without regard for the children.

At a contested jurisdiction/disposition hearing, beginning on August 30, 2006, the court heard testimony from mother, S.M., D.L., and the social worker. D.L. testified that father had sexually abused him 18 times, and he told mother about the abuse every time. S.M. testified that father stayed at their house for a couple of nights during Christmastime and that he touched her private part (unspecified) with his private part. Even after she told mother what happened, father still was allowed to visit. Mother testified that father came to her house on December 23, 2005, with a letter from his parole agent stating that he could have visitation with his children during Christmas. The social worker testified that she received a copy of the letter, which authorized father to have one supervised visit but did not authorize an overnight visit. The social worker spoke with mother about the letter and told her to wait until the January 3, 2006, hearing before allowing a visit.

The court sustained the petitions, finding true most of the allegations, and declared the children dependents of the court. The court found that D.L. had been sexually abused by father and had been suffering severe emotional damage, and that there had been severe sexual abuse of S.M. by father. The court denied mother reunification services with regard to J.P. because the maximum statutory time to reunify had passed. The court then denied reunification services as to the older children, pursuant to section 361.5, subdivision (b)(10), stating that mother had now had her services terminated with regard to one of their siblings. The court also cited section 361.5, subdivisions (b)(6) and (h), in finding that it would not be beneficial to provide further reunification services and in denying services. The court then set a section 366.26 hearing.

## ANALYSIS

### The Court Properly Denied Mother Reunification Services Under Section 361.5, Subdivision (b)

Mother contends that the court erred in denying her reunification services under section 361.5, subdivision (b)(6), (7), and (10). At the outset, we note that the record does not show that the court denied services under section 361.5, subdivision (b)(7). We conclude that the court properly denied services under section 361.5, subdivision (b)(6).

#### A. *Standard of Review*

"We affirm an order denying reunification services if the order is supported by substantial evidence. [Citation.]" (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 839 [23 Cal.Rptr.3d 207].)

## B. *There Was Substantial Evidence to Support the Court's Order*

Mother argues that, despite the court's finding that S.M. and D.L. suffered severe sexual abuse, the court improperly applied section 361.5, subdivision (b)(6) because she was not the offending parent (e.g., the actual abuser), and because the children would have benefited from reunification services. We disagree.

■ Section 361.5, subdivision (b)(6) states that reunification services need not be provided to a parent when the court finds, by clear and convincing evidence, that "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse . . . to the child, a sibling, or a half-sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian. [¶] A finding of severe sexual abuse, for the purposes of this subdivision, *may be based on, but is not limited to*, sexual intercourse, or stimulation involving genital-genital . . . , whether between the parent or guardian and the child . . . , or *between the child . . . and another person . . . with the actual or implied consent of the parent* or guardian . . . ." (Italics added.)

■ By its express terms, section 361.5, subdivision (b)(6) applies to a parent who gave actual or implied consent to the sexual abuse of the child by another person, as well as to the parent who was the actual perpetrator of the sexual abuse. In the instant case, there was undisputed evidence that mother, by her actions, impliedly consented to the sexual abuse of S.M. by father. The evidence showed that father stayed overnight at the family home during Christmastime and that he sexually abused S.M. at that time. Mother allowed father to stay overnight at the house, despite knowing that father had previously sexually abused D.L. multiple times. As stated by the court, mother knew of the risk of father's past offending behavior, and knew of the impact that father's conduct of physical abuse, domestic violence, and sexual abuse had had on the family. Nonetheless, she exposed the children to the risk of sexual abuse by allowing father to stay overnight in the house. There was substantial evidence to support the court's finding that mother was an offending parent, within the meaning of section 361.5, subdivision (b)(6).

■ In addition, the court set forth its factual finding that it would not benefit the children for the court to pursue reunification services with mother.

Section 361.5, subdivision (h) lists some factors to be considered by the court in determining whether reunification services would benefit the child. The factors listed include the "specific act *or omission* comprising the severe sexual abuse . . . inflicted on the child or the child's sibling," the circumstances under which the abuse occurred, the "severity of the emotional trauma suffered by the child or the child's sibling" (§ 361.5, subd. (h), italics added), any history of abuse of other children, the likelihood that the child may be safely returned to the parent's care within 12 months unsupervised, and the child's desire to be reunified with the parent. Here, the court explicitly stated that it considered all of these factors, noting "the specific omission that set[] the stage for [S.M.] to be sexually abused and suffer severe sexual abuse at the hands of her father." After properly considering all of these factors, and not solely the fact that D.L. said that he wanted to live with mother, as she asserts, the court concluded that it would not benefit any one of the children to provide mother with reunification services.

Mother relies upon *In re Kenneth M.* (2004) 123 Cal.App.4th 16 [19 Cal.Rptr.3d 752] (*Kenneth M.*) to support her argument that the court may only deny a parent reunification services under section 361.5, subdivision (b)(6) if she was the actual perpetrator of the sexual abuse. *Kenneth M.* is distinguishable. In that case, the appellant asserted that the record did not support the denial of reunification services under section 361.5, subdivision (b)(6) because, one, that provision required identification of the perpetrator, and the perpetrator had not been identified; and two, subdivision (i) required certain factual findings not made by the juvenile court. (*Kenneth M., supra,* 123 Cal.App.4th at p. 21.) The appellate court agreed with the appellant, stating that section 361.5, subdivision (b)(6), applied to the parent who inflicted severe physical harm to the minor, and that subdivision (i) imposed on the juvenile court the duty to state the basis for its findings. The court found that neither of those circumstances was present in that case. (123 Cal.App.4th at p. 21.)

In the instant case, there was no question that father was the perpetrator of the sexual abuse. Moreover, we agree with the *Kenneth M.* court that section 361.5, subdivision (b)(6) applies to the actual perpetrator of the abuse, and also note that *Kenneth M.* did *not* restrict the application of subdivision (b)(6) to the actual abuser. In other words, *Kenneth M.* does not support mother's contention that she was not an offending parent within the meaning of subdivision (b)(6) simply because she was not the perpetrator. Furthermore, unlike *Kenneth M.,* the court here clearly stated the basis for its finding that it would not be beneficial to provide reunification services.

Mother further argues that the court improperly denied her reunification services under section 361.5, subdivision (b)(10), which states that a court may deny services where "the court ordered termination of reunification services for any siblings . . . of the child because the parent . . . failed to reunify with the sibling . . . after the sibling . . . had been removed from that parent . . . ." After denying mother reunification services regarding J.P., since the statutory timeframe for her to reunify with him had passed (it had been over 18 months since he was originally removed from mother's care), the court stated that such order "put[] into play the 361.5 sub (b) sub (10) that mother has had her services terminated for a sibling . . . of [the older] children." It is not clear from the record that mother had her reunification services as to J.P. actually terminated, since the court previously returned J.P. to mother's care on a family maintenance plan. In any event, since the court properly denied reunification services under section 361.5, subdivision (b)(6), it was not necessary for the court to deny services under section 361.5, subdivision (b)(10), as well.

## C. *Reunification Was Not in the Children's Best Interest*

In the alternative, mother argues that the court could have offered her reunification services under section 361.5, subdivision (c), since it was clear from the record that D.L. wanted to return to her custody and because, even after the social worker was informed about the sexual abuse allegations, she continued to recommend that the children remain in mother's care. We disagree.

In order for the court to order services under section 361.5, subdivision (c), the court would have to find, by clear and convincing evidence, that reunification was in the best interests of the children. (§ 361.5, subd. (c).) At the outset, we note that the court expressed its concern that the social worker failed to modify the report recommending the dismissal of the older children's cases while the sexual abuse allegation was under investigation. We further note that the court clearly and properly found that offering mother reunification services would not be in the best interests of the children. (See pt. A., *ante.*) Mother allowed father, a known sexual molester, to stay overnight at her home with the children. As noted by the court, mother "afforded [father] with the opportunity to have access to [the children] and he, indeed, took advantage of that opportunity and thankfully only sexually molested one of them instead of all of them." The court stated that it did not find mother's actions reasonable or protective. There was no evidence before the court that reunification was in the best interests of the children.

## DISPOSITION

The writ petition is denied.

McKinster, J., and Miller, J., concurred.