Filed 6/3/15  In re Alexia G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ALEXIA G. et al., Persons Coming Under the Juvenile Court Law. | D067457 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1195 A/B) |
| v. | |
| JENNIFER G., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Jennifer G. appeals the court's judgment denying her reunification services to her daughters, Alexia G. and Z.G. (together, the girls), under Welfare and Institutions Code section 361.5, subdivisions (b)(6) and (e)(1).[1] She contends there was insufficient evidence to support that (1) she actually or impliedly consented to any severe sexual abuse of the girls and (2) providing reunification services to her would not benefit them. (§ 361.5, subd. (b)(6).) She also contends there was insufficient evidence to support that reunification services would be detrimental to the girls. (§ 361.5, subd. (e)(1).) We reject Jennifer's contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2014, Jennifer's husband and the girls' stepfather, Jonathan G., was arrested for child pornography. The Federal Bureau of Investigation (FBI) and the San Diego Police Department obtained voluntary confessions and statements from him and Jennifer, prompting the San Diego County Health and Human Services Agency (the Agency) to file dependency petitions on behalf of six-year-old Alexia and four-year-old Z.G. (§ 300, subd. (d).) The petitions alleged the girls were subjected to numerous acts of sexual abuse by Jennifer and Jonathan over a two-year period.

When interviewed by the FBI, Jennifer first denied knowledge of any sexual improprieties concerning the girls, but eventually admitted otherwise after learning that Jonathan had confessed to sexually molesting them with her participation. She stated that

---

[1]     All further statutory references are to the Welfare and Institutions Code.

she had had sex with Jonathan while the girls were awake on the same bed and could see them. On multiple occasions, they had sex while Alexia or Z.G. sat on Jennifer's "breast/stomach" area. For example, Jennifer demonstrated that she would lie on her back and have Z.G. lie on top of her (also on her back wearing only underwear), facing Jonathan, while they were having sex.[2] Though Jennifer denied witnessing it, Jonathan admitted he would ejaculate on the girls' stomachs on these occasions. Jennifer knew of instances where Jonathan had told her he had ejaculated in Z.G.'s mouth.

In addition, Jennifer permitted the girls to shower with Jonathan. On at least one occasion when Alexia was four or five, Jennifer saw Alexia playing with Jonathan's penis in the shower. Jennifer told Alexia not to do that, but Jonathan said, "It's okay, I like it." On another occasion, Jennifer walked in on Jonathan in the bathroom with his penis hanging out, and Alexia crying, apparently in distress. There were also times when Alexia would be finishing her shower, and Jonathan would tell a naked Alexia to "get on mommy," while he had sexual intercourse with Jennifer. Once Jennifer personally witnessed Jonathan making Alexia give him a "blow job" (oral sex) in the shower. When Jennifer saw this, she asked Alexia, "why did you do that?" Alexia did not know. Jennifer asked Jonathan, "why did you make her do that?" and he responded that he wanted to see how it would feel and promised he would not do it again.

Jennifer did not witness Jonathan penetrate the girls vaginally or anally, but knew

---

[2]     Jennifer indicated that Z.G. was the "primary target" of these activities because Z.G. had speech impediments from mild cerebral palsy and did not "know how to say no."

he wanted to. Jonathan had asked Jennifer if he could "pop their cherry," and repeatedly begged her "please, please, please" to let him do it. Jennifer admitted this "peer pressure" caused her to say "fine just do it," though she did not believe he ever did. Medical forensic examinations of the girls were inconclusive, but both had abnormalities in their anal/genital regions consistent with a history of sexual abuse.

Jennifer did not report any of the abuse that occurred over two years to authorities, for fear of getting in trouble. Although she thought some of these acts were "gross" or made her uncomfortable, she was trying to make Jonathan happy. At no time did she prevent the girls from being alone with Jonathan, and Alexia had been alone with him within the past six months, even though he was no longer living with them. Finally, Jennifer admitted to sending a nude picture of Z.G. to Jonathan.

Jennifer was arrested and charged with several felony counts of child cruelty, lewd and lascivious acts with a child under 14, and child pornography. A criminal protective order prohibited her from having any contact with Alexia and Z.G. until 2017. The girls were initially detained at Polinsky Children's Center and then transitioned to a foster home; they received different forms of therapy and were going to require ongoing trauma therapy.

In December 2014, the court held a contested adjudication and disposition hearing, where it considered a series of Agency reports containing interviews with Jennifer, police reports, and medical exams. The court found by clear and convincing evidence that the girls had suffered severe sexual abuse and denied reunification services to Jennifer.

4

DISCUSSION

I

*Denial of Reunification Services Under Section 361.5, Subdivision (b)(6)*

A.     Section 361.5, Subdivision (b)(6)

Jennifer contends there was insufficient evidence to support a denial of reunification services under section 361.5, subdivision (b)(6), which provides:

> "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, . . . [¶] . . . [¶]  (6) [t]hat the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of *severe sexual abuse* or the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian."  (Italics added.)

A finding of severe sexual abuse "may be based on, *but is not limited to*, sexual intercourse, or stimulation involving genital-genital, *oral-genital*, anal-genital, or oral-anal contact, . . . between the child . . . and another person . . . with the *actual or implied consent* of the parent . . . ." (§ 361.5, subd. (b)(6), italics added.)

If the juvenile court finds section 361.5, subdivision (b)(6) applicable, it must read into the record the basis for a finding of severe sexual abuse and specify the factual findings used to determine the provision of reunification services to the offending parent would not benefit the child.  (§ 361.5, subd. (k).)  In determining whether the child will benefit from reunification services, the court must consider the factors set forth in section

5

361.5, subdivision (i).[3]

Jennifer contends the court did not state on the record the underlying factual basis for its finding of severe sexual abuse, and there was insufficient evidence to support that she actually or impliedly consented to any incidents of severe sexual abuse. She further contends there was insufficient evidence to support the court's finding that it would not benefit the girls to provide her reunification services.

We review the juvenile court's order denying reunification services for substantial evidence. (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 839.) In so doing, we examine the record in the light most favorable to the court's findings and conclusions, defer to the court on issues of credibility, resolve all conflicts in the evidence in support of the court's findings, and draw all legitimate inferences to uphold the court's order. (*In re Albert T.* (2006) 144 Cal.App.4th 207, 216.)

B.     The Juvenile Court's Finding of Severe Sexual Abuse

At the adjudication hearing where it denied Jennifer reunification services under section 361.5, subdivision (b)(6), the court stated that it had found by clear and convincing evidence that the allegations in the petitions for both Z.G. and Alexia were

---

[3]     The factors are: (1) the specific act or omission comprising the severe sexual abuse or the severe physical harm inflicted on the child or the child's sibling or half sibling (2) the circumstances under which the abuse or harm was inflicted on the child or the child's sibling or half sibling; (3) the severity of the emotional trauma suffered by the child or the child's sibling or half sibling; (4) any history of abuse of other children by the offending parent or guardian; (5) the likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision; and (6) whether or not the child desires to be reunified with the offending parent or guardian. (§ 361.5, subd. (i).)

"true." With few variations, those petitions alleged that between September 2012 and October 19, 2014, Jennifer and Jonathan exposed the girls to sexual abuse, including having sex with the girls on the same bed, Jonathan's ejaculation on the girls' bodies and in their mouths, and Jennifer's failure to stop Jonathan's contact with the girls. The petitions further alleged that Jennifer had observed Alexia orally copulating Jonathan, had had Z.G. laying on her body facing Jonathan while Jennifer had sex with him, and had sent Jonathan a nude picture of Z.G. Consequently, we reject Jennifer's claim the juvenile court did not make a record of its factual finding of severe sexual abuse. The court based its finding of severe sexual abuse on the alleged incidents that had transpired over two years, which Jennifer did nothing to prevent. If there was any doubt, the court remarked on the record:

> "[Jennifer] completely abandoned the role of a caretaker. She offered her girls up like lambs for the slaughter for sexual abuse over an extended period of time. It is the ultimate violation of trust between a parent and a child to do so in a . . . prolonged fashion in which she did . . . it has imposed such a complicated trauma on these girls . . . ."

Finally, even if the court had not articulated its factual findings, we could have inferred them from the evidence contained in the appellate record. (*In re S.G.* (2003) 112 Cal.App.4th 1254, 1260 [required findings supported by substantial evidence can be inferred].)

C.     Substantial Evidence Supports that Jennifer Consented to the Severe Sexual Abuse of the Girls

Despite characterizing various acts as abhorrent and disturbing, Jennifer argues that only the incidents of oral sex counted as "severe" sexual abuse, and there was

7

insufficient evidence that she impliedly consented to any acts of severe sexual abuse.[4]

The arguments are meritless. By the statute's plain language, a finding of "severe" sexual abuse under section 361.5, subdivision (b)(6), is not limited to certain specified acts. Other repulsive incidents repeatedly occurring over an extended period of time could also support a finding that the girls were victims of severe sexual abuse. Regardless, the undisputed evidence shows that Alexia and Z.G. were each subjected to oral-genital contact by Jonathan.

Further, the record is replete with evidence that these incidents occurred with Jennifer's actual or implied consent. (See *Amber K. v. Superior Court* (2006) 146 Cal.App.4th 553, 561 [mother impliedly consented to sexual abuse when she allowed father to stay overnight at the house, despite knowing that father had previously sexually abused child multiple times].) Jennifer not only knew of Jonathan's sexual proclivities, which were escalating in depravity, she also indulged him, participated in various disgusting acts, and knew that he wanted to "do more sexual things" to the girls. When Jonathan asked Jennifer if he could "pop their cherry," Jennifer admitted her assent, fully understanding that he was asking for permission to have sex with the girls. Over the course of two years, Jennifer failed to report a single incident to authorities, and in fact, continued to permit Jonathan to shower with and be alone with Alexia and/or Z.G. There

---

4       The medical forensic examinations contain a statement attributed to an unidentified social worker that "stepfather has confessed to anal and vaginal penetration, and oral copulation over the course of [two] years." Because anal and/or vaginal penetration was not alleged in the Agency's petitions, we do not consider those acts as part of our analysis.

was substantial evidence to support the court's finding that Jennifer was an offending parent within the meaning of section 361.5, subdivision (b)(6).

D.    Substantial Evidence Supports that Reunification Services Would Not Benefit the Girls

Jennifer argues the court gave no reasons for its explicit finding that providing her reunification services would not benefit the girls.  The argument is not well taken.  The court's rationale, and its consideration of relevant factors, is evident from the record. (§ 361.5, subd. (i) [court considers "any information it deems relevant," including the listed factors].)  The court acknowledged that Jennifer had been the girls' primary caretaker, but described, poignantly, how Jennifer had failed to protect them from sexual abuse over two years, violating all trust.  In particular, the court observed that Jennifer was "the person who should have been most protective of them," but instead, "abandoned them" and "inflicted a profound trauma on her girls for an extended period of time."  The FBI and police involvement in the case had "completely upended" their lives, and the girls were in distress.  Furthermore, a criminal protective order prevented Jennifer from having any contact with them until 2017.  Thus, the court concluded that the girls needed to "get to a home that will be protective of them for the rest of their days."  We agree. The court's finding was supported by substantial evidence.

II

*Denial of Reunification Services under Section 361.5, Subdivision (e)(1)*

Jennifer challenges the sufficiency of evidence to support the denial of reunification services to her under section 361.5, subdivision (e)(1), which provides:

9

"If the parent or guardian is incarcerated . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered . . . , the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations described in subdivision (a), and any other appropriate factors."

Section 361.5, subdivision (e)(1), is applicable to a parent who is incarcerated while awaiting trial. (*Edgar O. v. Superior Court* (2000) 84 Cal.App.4th 13, 18.)

Jennifer does not dispute that the court expressly referenced the factors of section 361.5, subdivision (e)(1), in reaching a decision; she merely quibbles with the court's conclusions, and argues that it should not have speculated on the length of any criminal sentence. For the same reasons the court found reunification services for Jennifer would not benefit the girls, it found by clear and convincing evidence that services would in fact be detrimental to them. Above all, the girls needed stability and "to feel safe." To that end, the court compellingly noted that Jennifer had completely violated her daughters' trust by offering them up for sexual abuse over two years, the nature of the crime was "horrific," and the girls were in the process of reunifying with their biological father to obtain a stable life in a protective home. The court also appropriately considered that Jennifer was prohibited by law from having any contact with the girls, and was likely to be incarcerated for an extended period of time. Substantial evidence supports the court's denial of reunification services under section 361.5, subdivision (e)(1).

10

DISPOSITION

The judgment is affirmed.

                                          McCONNELL, P. J.

WE CONCUR:


BENKE, J.


McDONALD, J.

11