Filed 5/13/22  R.F. v. Super. Ct. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| R.F.,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>      Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Real Parties in Interest. | No. B316843<br><br>(Super. Ct. No. 21CCJP03006A) |

ORIGINAL PROCEEDINGS in Dependency Petition for Extraordinary Writ.  Hernan D. Vera, Judge.  Petition denied.

Law Office of Jolene Metzger, Jenna Van Middelem and Nicole J. Johnson for Petitioner.

No appearance for Respondent.

Dawyn Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Real Party in Interest.

## INTRODUCTION

At the jurisdiction hearing, Leo R. (born Oct. 2019) was adjudicated a dependent under Welfare and Institutions Code section 300, subdivision (j).[1] At the disposition hearing, the juvenile court denied mother reunification services under section 361.5, subdivision (b)(6) (hereafter 361.5(b)(6)) and set a permanency planning hearing (§ 366.26).

Mother filed a petition for extraordinary writ challenging the juvenile court's order denying reunification services under section 361.5(b)(6). As relevant here, section 361.5(b)(6) requires the court to deny reunification services to a parent when the child or a sibling was severely physically harmed by an act or omission of the parent and the child would not benefit from reunifying with the parent. In deciding whether reunification services would benefit the child, the court must consider any information it deems relevant, including a list of factors outlined in section 361.5, subdivision (i)(1)-(6). When section 361.5(b)(6) applies, the court may order services only if reunification serves the child's best interest. (§ 361.5, subd. (c)(2).)

We conclude substantial evidence supports the juvenile court's finding under section 361.5(b)(6) that Leo's half-sibling was severely physically harmed by mother and Leo would not benefit from reunifying. We also conclude the court acted within its discretion in concluding under section

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

361.5, subdivision (c)(2) that it was not in Leo's best interest to order reunification services. Therefore, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother had a prior history with DCFS, which included several substantiated referrals of general neglect of Leo's half-sibling D.F. (born Oct. 2012) due to mother's illicit drug use. In 2018, D.F. and Leo's other half-sibling A.F. (born Feb. 2017) were adjudicated dependents based on mother's failure to protect A.F. from physical abuse and the substantial risk of harm to her sibling, D.F. (§ 300, subds. (b), (j).) Both children were adopted after mother's parental rights were terminated.

On April 28, 2021, DCFS received a referral reporting A.F. was physically abused and mother was subsequently convicted in 2019 of child cruelty (Pen. Code, § 273a, subd. (a)).[2] She was sentenced to four years in state prison, but later (in December 2020) was released on probation. It was further reported that mother was living with maternal grandmother, with mother's one-year old child (later determined to be Leo).

After multiple failed attempts to contact mother, including through her probation officer, the social worker was finally able to speak to mother at the maternal grandmother's home about mother's prior dependency case. Mother

---

[2] Penal Code section 273a, subdivision (a) provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years."

reported that she had been in an abusive relationship with her then boyfriend and that despite advice from law enforcement to leave the relationship, she had refused. She stated that her boyfriend (not she) abused her children, and she was the one who took A.F. to the hospital. Mother stated she no longer had contact with the boyfriend, but identified him as M.R., and admitted he was Leo's biological father. Mother denied abusing Leo and her older children. She also denied substance and alcohol abuse.

On June 29, 2021, DCFS filed a dependency petition on behalf of Leo under section 300, subdivisions (b) and (j). The petition alleged that on May 23, 2018, Leo's half-sibling A.F. was diagnosed as having suffered "significant head injuries with subdural hematoma, chronic deformity to her head, indicative of prior head trauma, a burn to her right thigh, 'scatter bruises' throughout her body in various stages of healing, bilateral fractures to her ribs in various stages of healing, injuries to both sides of her head with bleeding from her left side, abdominal trauma, and a leg deformity indicative of a prior fracture left untreated." Upon further examination, A.F. was found to have sustained previous subdural hematomas. It was determined A.F.'s injuries were consisted with inflicted trauma and would not ordinarily occur except as a result of "deliberate, unreasonable and neglectful acts by . . . mother." In an addendum report dated July 2, 2021, DCFS recommended no family reunification services pursuant to section 361.5.

At the July 2, 2021 detention hearing, the juvenile court found a prima facie case for detaining Leo and ordered him placed with maternal grandmother under the supervision of DCFS.[3]

---

[3] After a warrant to remove Leo from mother's custody was authorized on June 21, 2021, mother moved out of maternal grandmother's home.

4

In the detention and jurisdictional report, mother denied abusing A.F. and stated that she believed M.R. injured the child. She stated that on one occasion she was cooking in the kitchen and the children (A.F. and D.F.) were in another room with M.R. When mother entered the room, she noticed "something did not look right with [A.F.]'s leg." She described A.F.'s bone in her leg "was sticking out," so she tried to "massage it." In response to mother asking what happened, M.R. said a piece of furniture had fallen on A.F. Mother did not question this response. A week later, mother noticed A.F.'s leg looked worse, it looked "as if it was broken." She also noticed A.F. was in pain, and A.F. "wouldn't eat, she would throw-up."

Mother stated she did not take A.F. to the hospital sooner because she was worried A.F. would be taken away from her. Mother admitted she had lied to medical staff and social workers about how A.F. was injured. She denied knowing A.F. suffered a burn to her right thigh, had "scatter bruises" throughout her body in various stages of healing, bilateral fractures to her ribs in various stages of healing, and head trauma. She also denied witnessing M.R. physically abuse A.F., but reported he was violent towards her. Mother acknowledged she did not protect her children. Mother reported she ended her relationship with M.R. when A.F. and D.F. were removed from her care, even though Leo's birthdate contradicted that claim.

Maternal grandmother reported Leo had been living with her since birth. She explained that when mother was incarcerated, she had asked maternal grandmother to care for him.

DCFS summarized the injuries listed in A.F.'s hospital records from 2018 (at least 28 injuries at various stages, not including bruises too numerous to count). A child abuse expert stated that mother provided no adequate explanation for the injuries, and that the injuries were "consistent

5

with abusive head trauma and severe child physical abuse that would be obvious to any caregiver."

In a last minute information for the court, DCFS reported Leo had received a physical examination indicating he had "global delays in communication, walking and gross and fine motor skills." Leo was also "nonverbal, non-ambulatory." A neurology and genetics referral were recommended based on low muscle tone, small stature, and upward slant to the eyes. Leo presented with "facial characteristics similar to those of a child with fetal alcohol spectrum disorders." The multidisciplinary assessment team recommended that Leo would benefit from occupational therapy and early intervention services, along with other programs.

At the jurisdictional hearing, the juvenile court admitted DCFS's exhibits and took judicial notice of the contents of the judicial file in the dependency case of Leo's half-siblings A.F. and D.F. Leo's counsel joined in DCFS's recommendation to sustain the petition under section 300, subdivision (j) based on A.F.'s severe injuries resulting from physical abuse. Mother's counsel argued for dismissal of the petition because there was no current risk to Leo. Based on the evidence and argument, the court sustained the dependency petition as to section 300, subdivision (j) but struck subdivision (b) as duplicative. The disposition hearing was continued to allow DCFS to complete due diligence for M.R.

At the disposition hearing, DCFS sought removal of Leo and a denial of family reunification services based on section 361.5(b)(6). Leo's counsel joined in DCFS's recommendation, explaining that the injuries to A.F. were "sickening," and argued that it posed "a real risk" to Leo should services be offered to mother. In response, mother advised the court she was "not contesting the basis for [DCFS]'s recommendation." However, under section

6

361.5, subdivision (c)(2), mother asked the court to use its discretion to order family reunification services as it was in Leo's best interest. After argument, the court stated it was inclined to accept DCFS's recommendation and took the matter under submission. The court explained it would review the court file on the prior dependency matter before issuing a final ruling.

At the continued disposition hearing, the court stated that given the record in the case, it could not find by clear and convincing evidence that it is in the best interest of the child to order family reunification services. The court explained that "also, relevant to [the] analysis is the fact that mother ha[d] concealed and lied to [DCFS] about the reasons for [A.F.'s] injuries." Furthermore, there were previous substantiated referrals involving mother's substance abuse and issues of neglect. The court then set a permanency planning hearing for March 14, 2022.

## DISCUSSION

Mother contends the juvenile court erred in bypassing reunification services pursuant to section 361.5(b)(6). She argues the court failed to read into the record the basis for its section 361.5(b)(6) finding, and there was insufficient evidence to support the court's order denying reunification services. We are not persuaded by either argument.

### A. *Applicable Law*

"The statutory scheme recognizes that there are cases in which the delay attributable to the provision of reunification services would be more detrimental to the minor than discounting the competing goal of family preservation. [Citation.] Specifically, section 361.5, subdivision (b), exempts from reunification services "'those parents who are unlikely to benefit"'

7

[citation] from such services or for whom reunification efforts are likely to be 'fruitless' [citation]." (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120–1121.)

When the juvenile court concludes reunification efforts should not be provided, it fast-tracks the dependent minor to permanency planning so that permanent out-of-home placement can be arranged. (*Jennifer S. v. Superior Court, supra*, 15 Cal.App.5th at p. 1121.) The statutory sections authorizing denial of reunification services are commonly referred to as "bypass" provisions. (*Ibid*.)

As relevant here, under the bypass provisions of section 365.1(b)(6), reunification services need not be provided if the court finds by clear and convincing evidence that "the infliction of severe physical harm to the child . . . or a half sibling by a parent . . . , and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent . . . .." (§ 361.5(b)(6).) Severe physical harm is defined as "deliberate and serious injury inflicted to or on a child's body or the body of a sibling or half sibling of the child by an act or omission of the parent." (*Ibid*.) The party seeking bypass of reunification services has the burden of proving that reunification service need not be provided. (§ 361.5, subd. (b); *In re Angelique C.* (2003) 113 Cal.App.4th 509, 521, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; see Evid. Code, § 500.)

In determining whether reunification services will benefit the child pursuant to section 361.5(b)(6), "the court shall consider any information it deems relevant, including the following factors: [¶] (1) The specific act or omission comprising . . . the severe physical harm inflicted on . . . the child's sibling or half sibling[;] [¶] (2) The circumstances under which the abuse or

8

harm was inflicted on . . . the child's sibling or half sibling[;] [¶] (3) The severity of the emotional trauma suffered by the child or the child's sibling or half sibling[;] [¶] (4) Any history of abuse of other children by the offending parent . . . [;] [¶] (5) The likelihood that the child may be safely returned to the care of the offending parent . . . within 12 months with no continuing supervision[;] [¶] (6) Whether or not the child desires to be reunified with the offending parent." (§ 361.5, subd. (i).)

Once it has been determined that section 361.5(b)(6) applies, "'"the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]'" [Citation.]" (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227; in accord, *In re A.G.* (2012) 207 Cal.App.4th 276, 281.) Thus, under section 361.5, subdivision (c)(2), "[t]he court shall not order reunification for a parent . . . described in [section 361.5(b)(6)] unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "The burden is on the parent to . . . show that reunification would serve the best interests of the child." (*William B., supra,* at p. 1227; in accord, *In re A.G, supra,* at p. 281.)

We review the juvenile court's finding a parent falls within section 361.5(b)(6) for substantial evidence. (*Amber K. v. Superior Court* (2006) 146 Cal.App.4th 553, 560.) We review the court's best interest determination under section 361.5, subdivision (c)(2) for abuse of discretion. (*In re William B., supra*, 163 Cal.App.4th at p. 1229.)

B. *Order Denying Mother Reunification Services*

Mother contends the court's bypass determination must be reversed because the court did not read into the record the basis for its finding of

9

severe physical abuse or whether reunification would be beneficial to Leo, as required by section 361.5, subdivision (k).[4] However, mother's challenge to the court's section 361.5(b)(6) finding is forfeited. At the disposition hearing, mother stated that she did not contest the applicability of 361.5(b)(6), but rather she asked the court (assuming this bypass provision applied) to exercise its discretion to order reunification services pursuant to section 361.5, subdivision (c)(2).[5] (See *In re Richard K.* (1994) 25 Cal.App.4th 580, 590.) In any event, we conclude any error was harmless as the findings are implied in the record and mother has failed to show that it is reasonably likely that she would have obtained a more favorable result but for the error.

Where a juvenile court fails to state on the record the basis for its section 361.5(b)(6) bypass finding, "we will infer a necessary finding provided the implicit finding is supported by substantial evidence." (*In re S.G.* (2003) 112 Cal.App.4th 1254, 1260 [refusing to reverse court's § 361.5(b)(6) bypass determination for failure to state factual basis on record because record contained substantial evidence to infer the necessary findings]; see *In re Corienna G.* (1989) 213 Cal.App.3d 73, 83–84 [refusing to reverse and remand matter based on court's failure to make the express finding required in

---

[4] Under section 361.5, subdivision (k): "The court shall read into the record the basis for a finding of . . . the infliction of severe physical harm under paragraph (6) of subdivision (b), and shall also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit the child."

[5] Mother incorrectly relied on factors outlined in section 361.5, subdivision (i) in determining whether providing reunification services was in Leo's best interest. As previously noted, this subdivision pertains to the court making "a factual finding that it would not benefit the child to pursue reunification services with the offending parent" under section 361.5(b)(6).

§ 366.25 because substantial evidence in record allowed the appellate court to imply the necessary finding].)

On this record, as discussed in our recitation of the evidence above, there was ample evidence to infer the findings necessary to support the court's bypass determination. Mother's failure to protect A.F. from extreme physical abuse, for which she was convicted of child cruelty, placed Leo at substantial risk of suffering the same type of abuse.

As to whether reunification services would benefit Leo, the severity of injuries suffered by A.F. alone supports a finding that services would not be to Leo's benefit. Further, as noted by the juvenile court, mother concealed information and lied about the reasons for A.F.'s injuries, and mother had prior substantiated referrals involving illicit drug use and neglect. We therefore find substantial evidence to infer the necessary findings under section 361.5, subdivision (k), that providing services to mother would not benefit Leo.

Further, mother failed to meet her burden of showing under section 361.5, subdivision (c) that reunification was in Leo's best interests. Mother offered no evidence to show that, given the risk to Leo suggested by the severity of A.F. injuries, reunification would nonetheless somehow be in Leo's best interests.

//

//

//

//

//

//

11

## DISPOSITION

The petition for extraordinary writ relief is denied on the merits.  The stay imposed by this court is lifted.  The opinion is final as to this court.  (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


COLLINS, J.