Filed 2/3/16  In re B.S. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re B.S., a Person Coming Under the Juvenile Court Law. | |
| W.S., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF ALAMEDA COUNTY, <br><br> Respondent; <br><br> ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br> Real Party in Interest. | A146782 <br><br> (Alameda County <br> Super. Ct. No. OJ15024974) |

**I.**

**INTRODUCTION**

Petitioner W.S. (Father) files this petition for extraordinary writ seeking review of the court order setting a hearing under Welfare and Institutions Code section 366.26[1] to consider termination of parental rights and a permanent plan for four-year-old B.S. Father contends the court erred in denying him reunification services under section 361.5, subdivisions (b)(5) and (b)(6) because there was no clear and convincing evidence of

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise identified.

1

severe physical abuse by Father and the court did not properly consider whether reunification was in B.S.'s best interest. We deny the writ petition on the merits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2015, B.S., then three years old, was taken into protective custody by the Oakland Police Department and taken to Oakland Children's Hospital (the hospital). When conducting a home health and safety check on B.S., the police found him home alone in an apartment that had broken glass, open medication bottles, and open toxic cleaning supplies. He had bruises on his forehead, a large abrasion on his cheek, burn marks on his face and back, and a burn or bite mark on his lower lip. He was suffering from internal bleeding and a laceration to his liver. The doctor identified the injuries as "non-accidental."

Mother admitted she had "socked" B.S. in the stomach the previous day and he had trouble breathing, leading her to administer CPR. She did not take him to the hospital.

B.S.'s parents had shared custody, but on May 29, 2015, Mother was given temporary custody because of allegations of abuse by Father. Prior to that date, in early May, B.S. had been seen at the hospital with "patterned marks" that looked like car cigarette lighter burns.

On June 3, 2015, the Alameda County Social Services Agency (the Agency) filed a dependency petition under section 300, subdivisions (a), (b), (e), and (g). The petition alleged B.S. had suffered serious physical harm, was living in unsafe conditions, and there was no provision for support. In support of jurisdiction, the petition alleged: (1) B.S. had internal bleeding and a liver laceration; (2) the hospital doctors believed the injuries were not accidental; (3) Mother admitted punching B.S. in the stomach; (4) Mother had been arrested for child abuse; (5) a video recording showed mother walking into her apartment with B.S. crying and walking out "moments later" with B.S. looking unconscious; and (6) B.S. had patterned marks on his back that looked like car cigarette lighter burns.

2

At the detention hearing, the juvenile court found that the Agency made a prima facie case that B.S. was subject to the court's jurisdiction, and ordered the child be removed from the physical custody of both Mother and Father.

The Agency filed a jurisdiction and disposition report recommending no services be provided to either parent. The report documented alleged physical abuse by Father. In May 2015, a hospital doctor found "patterned marks" that looked like burns from a car cigarette lighter on B.S.'s back. The burns were sustained "over time" when B.S. was in Father's care. B.S. also had a loop mark on his right thigh consistent with being hit with a belt or cord. He also had "numerous linear hyper-pigmented marks" on his chest and abdomen. One treating physician noted: "These injuries are branding injuries and are torture." San Joaquin County Child Protective Services was conducting an investigation into physical abuse by Father, and the San Joaquin County court issued a restraining order preventing contact between Father and B.S.

Father denied causing any injuries to B.S. Father stated he was the primary care provider for B.S. since birth. According to Father, Mother had only visited B.S. four times in the child's life. Mother, in fact, had custody of B.S. from his birth until approximately June 2013.

The report found there was clear and convincing evidence that no reunification services should be provided to Mother or Father because both parents inflicted severe physical harm on B.S. B.S. would not benefit from reunification services because "[h]is treatment by both parents amounts to torture."

Prior to the jurisdiction and disposition hearing, the Agency filed an amended juvenile dependency petition. The amended petition contained the original allegations under section 300, subdivisions (a), (b), (e), and (g) and added an additional allegation of cruelty under subdivision (i). It alleged torture and cruelty by Mother based on the "non-accidental traumas" to B.S. and a video that showed Mother carrying B.S. into the apartment while he was crying and coming out two minutes later holding B.S., who appeared to be unconscious, with his head back and arms out.

3

The amended petition alleged torture and cruelty by Father because of the car cigarette lighter burns that happened while B.S. was in Father's care. Further, B.S. stated that Father hit him because he is a "bad boy." He said Father "hit me in my stomach" and "whupped me with a belt." When the clinical social worker asked B.S. how many times Father hit him, he responded: "He always hit me."

The court held a contested jurisdiction hearing on October 16 and 28, 2015. The social worker testified about the scars on B.S.'s back: four or five round areas of skin discoloration and thin slashes that are "heal scars."

Father testified that he had hit B.S. with a belt on one occasion but had not used other physical punishment. He stated he did not cause the circular marks on B.S.'s back and he never burned him. Father stated that he wanted to reunify with his son because he loved him and he deserved another try. He was the primary caretaker for B.S. from June 2013 to May 2015. He said that only his girlfriend and his girlfriend's mother helped care for B.S. He testified that there was no possibility that his girlfriend's mother's family could have injured B.S.

Father testified that he supervised B.S.'s baths regularly and watched him bathe in April and May 2015. He said he would have noticed circular marks on B.S.'s back.

He explained that when he dropped B.S. off at Mother's apartment for a visit in May 2015, she called him a few hours later and asked about the marks on B.S.'s back. When confronted with the hospital doctor's diagnosis that these circular marks on the child's back were at least two weeks old, Father stated it was "impossible."

Father's mother, M.W., testified she is a mandated reporter because of her job running a disabled group home. She testified that she would see B.S. two to three times per month. In mid-April 2015, she saw B.S. without a shirt and he had no marks or burns on his back. She stated she had seen Father hit B.S. with a belt and she told him not to do it and to use a "time out" instead. She testified that she had regular interaction with her grandson and even babysat him overnight and that Father's siblings also cared for B.S.

The Agency argued the medical evidence demonstrated the circular marks and lacerations on B.S.'s body happened while he was in Father's care. One of the medical

4

reports characterized the injuries as a "branding" and "torture." Father provided inconsistent testimony about who cared for B.S., and his testimony was contradicted by his mother, M.W. The Agency argued neither parent should receive reunification services and that under section 300, subdivision (e), the burden shifted to them to demonstrate they were entitled to services and they had not met that burden.

B.S.'s counsel similarly argued that Father knew or should have known about B.S.'s injuries based on his role as the primary caretaker and his admissions that he supervised B.S.'s baths regularly. The evidence demonstrated B.S. was severely physically abused while in his Father's care. Counsel argued the court need not determine if Father burned B.S. because the injuries occurred while in Father's care and he should have known and protected B.S. Counsel argued that reunification services were not in B.S's best interest. B.S.'s statements about his father were that he hit him and hurt him and thought he was a bad boy.

Father's counsel argued he did not abuse B.S. and the Agency had not demonstrated the circular marks and lacerations were severe physical abuse.

After hearing argument from all parties, the court stated: "I don't even know how to start other than poor B[.S.]. I'm at a los[s] regarding how a four-year-old child could suffer this much . . . by the people that claim to love him." The court noted that Father admitted that within hours of dropping B.S. off with Mother, she called to ask him about the marks on B.S.'s body. While in Father's care, B.S. suffered from abuse, "maybe even torture." B.S. told his doctors that his father "always hit me" and "[t]hey always hurt me." The court found it was "hard to believe" that a father who claims to be active in caring for his child and supervising his bathing would not have, at least, observed the marks on the child's body.

This child has been "abused, assaulted, tortured in two separate households by both of his parents or his parents' families. And this has to be the wors[t] thing that I can imagine for a child."

The court found Father's testimony not credible. He testified that only his girlfriend and her mother cared for B.S., but Father's mother, M.W., testified that she had

regular interaction with her grandson and even babysat for him overnight and that Father's siblings also cared for B.S.

The court found true all the allegations in the petition. It found the section 300, subdivision (e) and (i) allegations by clear and convincing evidence. The court ordered no reunification services for Mother or Father. "There is clear and convincing evidence that reunification services should be denied to the mother and father as follows: Pursuant to section 361.5[, subdivision] (b)(5) as well as 361.5[, subdivision] (b)(6), that the mother and father inflicted severe physical harm or severe sexual abuse on the child[.]" The court stated the factual basis for the finding was contained in Agency reports, police report, and medical records which document the severe injuries. B.S. would not benefit from reunification services because his treatment by both parents amounted to severe physical abuse as well as cruelty. The court stated the factual basis for this finding was the Agency's report.

The court set a section 366.26 hearing for February 19, 2016.

### III.

### DISCUSSION

Father raises two arguments on appeal. First, he argues the court's findings of the allegations under section 300, subdivisions (e) and (i) were not supported by substantial evidence. Second, he contends the court did not properly consider whether reunification was in B.S.'s best interest under section 361.5, subdivision (b)(6). Although Father only contests the court's finding under section 361.5, subdivision (b)(6), we address the court's primary finding under section 361.5, subdivision (b)(5) as well as its finding under subdivision (b)(6).

In reviewing an order denying reunification services, we determine if substantial evidence supports it. (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 196.) "[W]e resolve all conflicts in the evidence in favor of the juvenile court's finding. [Citation.]" (*Ibid.*) "A juvenile court has broad discretion when determining whether . . . reunification services would be in the best interests of the child under section 361.5, subdivision (c). [Citation.] An appellate court will reverse that determination only if the juvenile court

6

abuses its discretion. [Citation.]" (*In re William B.* (2008) 163 Cal.App.4th 1220, 1229.) The substantial evidence standard applies even if the standard of proof in the trial court is clear and convincing evidence. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.)

**A.** ***Substantial Evidence Supports the Juvenile Court's Findings B.S. Suffered Severe Physical Injury and Cruelty While in Father's Custody***

The juvenile court must provide family reunification services unless a specific statutory exception applies. (§ 361.5; *Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 845 (*Tyrone W.*).) As discussed below, the juvenile court found two exceptions applied in this case.

**1. Severe Physical Abuse under Section 361.5, subdivision (b)(5)**

Section 361.5, subdivision (b)(5) authorizes the court to deny reunification services to a parent when the child has been brought within the jurisdiction of the court under section 300, subdivision (e). (§ 361.5, subd. (b)(5).) Section 300, subdivision (e) provides a child may be judged a dependent of the court if a child "under the age of five years and has suffered severe physical abuse[2] by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child." (§ 300, subd. (e).) Pursuant to section 361.5, subdivision (c), if a juvenile court finds the subdivision (b)(5) circumstances to be supported by clear and convincing evidence, the juvenile court is *prohibited* from granting reunification services "unless it finds that, based on competent testimony, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent." (§ 361.5, subd. (c); *In re A.M.* (2013) 217 Cal.App.4th 1067.)

---

[2] For the purposes of this subdivision, "severe physical abuse" includes "any single act of abuse . . . or more than one act of physical abuse, each of which causes bleeding, deep bruising, significant external or internal swelling, bone fracture, or unconsciousness; or the willful, prolonged failure to provide adequate food." (§ 300, subd. (e).)

B.S.'s injuries were severe.[3] The severity of an injury may be judged by the fact it is still apparent after a significant period of time. (*In re Joshua H.* (1993) 13 Cal.App.4th 1718, 1729 ["the requisite severity may be inferred from the fact that the injuries were still apparent during the infant's . . . medical examination, *at least eight days later*" (original italics)].) B.S.'s branding injuries were visible when he was examined after being taken to the hospital both in May 2015 and June 2015. The injuries remained visible when the social worker saw B.S.'s back nearly four months later. Given the treating physician's assessment the injuries were likely a "branding" with a car cigarette lighter and constituted "torture," there is no question that B.S. suffered severe physical abuse. In addition to the burn marks, B.S. had "numerous linear hyper-pigmented marks" on his chest and abdomen and a loop mark on his right thigh, all of which were consistent with being beaten with a belt or cord.

Father also objects to the court's finding of cruelty by clear and convincing evidence although he does not directly address the finding in his petition. Section 300, subdivision (i) provides for jurisdiction where a child "has been subjected to an act or acts of cruelty by the parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from an act or acts of cruelty when the parent or guardian knew or reasonably should have known that the child was in danger of being subjected to an act or acts of cruelty. (§ 300, subd. (i).) Section 300, subdivision (i) applies in two situations: "The first is where the parent, guardian, or member of the household has directly subjected the child to an act or acts of cruelty. The second is where the parent or guardian has failed to protect the child from acts of cruelty by others." (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015.)

Acts of cruelty "are intentional acts that directly and needlessly inflict extreme pain or distress. They might be described, as one source suggests, as acts that produce a

---

[3] For purposes of this opinion, we only address the injuries that occurred while B.S. was in Father's custody. B.S.'s injuries in June 2015 caused by Mother constituted severe physical abuse as well.

shock of conscience." (*In re D.C.*, *supra*, 195 Cal.App.4th at p. 1017, citing Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2011), § 2.84[10], p. 2–226.)

The juvenile court's finding of cruelty is supported by substantial evidence. There can be no dispute that repeatedly using a car cigarette lighter to burn a three-year-old child is an act of cruelty. (See *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1466–1467.) In *In re Benjamin D.*, the father had repeatedly pinched the child on the abdomen, which "entailed real physical pain on a child not yet three years old, especially in the light of the other evidence pointing to [the father's] cavalier indifference toward the infliction of physical pain on [the child]. Such facts establish [the child] was, indeed, subject to an act or acts of cruelty by [the father]. [Citation.]" (*Id.* at p. 1472.) Here, the medical reports described the burns on B.S.'s back as "branding" and the result of torture. Even if Father did not personally inflict these injuries, his failure to protect B.S. from the cruelty by others is no less indifference to B.S.'s wellbeing than the child in *In re Benjamin D.* Accordingly, the court properly found section 300, subdivision (i) applied.

Rather than focusing on the evidence of severe injury and cruelty, Father argues there was no substantial evidence that he caused B.S.'s injuries or that he should have known how the injuries occurred. As B.S.'s primary caretaker, the evidence of abuse was unmistakable. The medical evidence demonstrated that prior to May 2015, while B.S. was in Father's care, he suffered burns on his back and was hit with something leaving strap marks on his thigh.

Father denied causing the burns or strap marks and denied he ever saw them on B.S's body. Father, however, testified that he supervised B.S.'s baths throughout his life, including in April and May 2015. Based on the medical evidence of the burns occurring over time, it is not possible that if Father supervised B.S.'s baths, he would be unaware of the injuries.

Father further admitted that within hours after leaving B.S. in Mother's care, she called him to ask about the circular marks on B.S.'s back. This provided additional evidence that the injuries occurred while B.S. was in Father's care.

9

Finally, B.S. stated he was abused by Father. He said Father "always hit" him, "whupped" him with a belt, and hurt him. The fact he did not specifically state Father caused the burns does not undermine the court's findings of severe physical abuse. "Section 300, subdivision (e), and subdivision (b)(5) of section 361.5, however, do not require identification of the perpetrator. [Citation.] Read together, those provisions permit denial of reunification services to either parent on a showing that a parent or someone known by a parent physically abused a minor. [Citation.] Thus, 'conduct' as it is used in section 361.5, subdivision (b)(5) refers to the parent in the household who knew or should have known of the abuse, whether or not that parent was the actual abuser. . . ." (*L.Z. v. Superior Court* (2010) 188 Cal.App.4th 1285, 1292, quoting *In re Kenneth M.* (2004) 123 Cal.App.4th 16, 21.)

The court's finding of severe physical abuse by clear and convincing evidence prohibited it from providing reunification services unless it found the services would prevent reabuse, or that failure to provide services would be detrimental to the child. (§ 361.5, subd. (c).) Father provided no evidence that reunification services would prevent him from once again inflicting or ignoring abuse to B.S. Father was unwilling to acknowledge the source of B.S's injuries and testified it was "impossible" the branding marks occurred while the child was in his care. "In those circumstances, there is no reason to believe further services will prevent h[im] from inflicting or ignoring the infliction of similar injuries in the future. For the same reason, there is no evidentiary basis for finding by clear and convincing evidence that reunification with [Father] would be in the best interests of [B.S.]. [Citation.]" (*In re A.M.*, *supra*, 217 Cal.App.4th at p. 1078.)

Father also presented no evidence that the failure to provide services would be detrimental to B.S. To the contrary, B.S. stated that his father "hit me in my stomach" and "whupped" him with a belt because he was a "bad boy." When asked how often his father hit him, he responded "[h]e always hit me." As the juvenile court observed, B.S. was forced to suffer at the hands of the people who claimed to love him, and thus there was no evidence it would be detrimental to B.S. to bypass services.

10

## 2.      Severe Physical Harm under Section 361.5, subdivision (b)(6)

Section 361.5, subdivision (b)(6) provides where a child has been declared a dependent as the result of "the infliction of severe physical harm to the child"[4] and "the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian," no services need be provided.  (§ 361.5, subd. (b)(6).)

The court's finding of severe physical abuse by clear and convincing evidence supports the finding of physical harm under section 361.5, subdivision (b)(6).  Further, like section 361.5, subdivision (b)(5), "[s]ection 361.5, subdivision (b)(6) is not limited to the parent or parents whose act directly caused the child's injury.  [Citation.]"  (*Tyrone W.*, *supra*, 151 Cal.App.4th at p. 851, citing *Amber K. v. Superior Court* (2006) 146 Cal.App.4th 553, 562.)  Even if Father did not inflict the car cigarette lighter burns on B.S.'s back, his failure to recognize the injuries and seek medical help constitutes the infliction of serious injury by omission.  (*Pablo S. v. Superior Court* (2002) 98 Cal.App.4th 292, 301 (*Pablo S.*) ["In light of Pablo's constant pain and the disfigurement that resulted from the broken leg, the parents' failure to provide medical attention constituted the infliction of serious injury by omission" under § 361.5, subd. (b)(6).].)  "[T]he court could reasonably conclude that it was more likely than not that [Father] either inflicted, knew about, or should have known about, the abuse because he was [B.S.]'s primary caretaker[.]"  (*K.F. v. Superior Court* (2014) 224 Cal.App.4th 1369, 1383.)

Given the impossibility that B.S. could have somehow gotten several car cigarette lighter burns on his back by accident, if Father did not cause the injuries, he should have recognized them as signs of abuse.  Father's claims he had no knowledge of the injuries and denial that "anyone in the minor's life could have or would have inflicted such injuries" were not credible.  (See *Pablo S.*, *supra*, 98 Cal.App.4th at p. 301 ["[F]or either

---

**4** "A finding of the infliction of severe physical harm, for the purposes of this subdivision, may be based on, but is not limited to, deliberate and serious injury inflicted to or on a child's body[.]"  (§ 361.5, subd. (b)(6).)

parent to suggest they did not know Pablo needed medical help is simply not credible"].) Under these circumstances, the court properly concluded that Father should be denied reunification services. "[T]here are no services that will prevent reabuse by a parent who refuses to acknowledge the abuse in the first place." (*In re A.M.*, *supra*, 217 Cal.App.4th at p. 1077.)

B.      *Reunification Is Not in B.S.'s Best Interest*

Father argues the court did not properly consider whether reunification would be in B.S.'s best interest. As outlined above, under section 361.5, subdivision (b)(6), the court shall not order reunification services unless it finds by clear and convincing evidence that reunification is in the best interest of the child. (§ 361.5, subd. (b)(6).)

"In determining whether reunification services will benefit the child, the court is required to consider any information it deems relevant, including the following factors: (1) the specific act or omission comprising the severe physical harm inflicted on the child or the child's sibling; (2) the circumstances under which the abuse or harm was inflicted on the child or the child's sibling; (3) the severity of the emotional trauma suffered by the child or the child's sibling; (4) any history of abuse of other children by the offending parent or guardian; (5) the likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision; (6) whether or not the child desires to be reunified with the offending parent or guardian. [Citation.]" (*Tyrone W.*, *supra*, 151 Cal.App.4th at pp. 847-848; § 361.5, subd. (i).)

While the court did not explicitly itemize the section 361.5, subdivision (i) factors on the record, the court can consider any information it deems relevant. We do not require a listing of the court's finding on every factor listed in subdivision (i). (*In re S.G.* (2003) 112 Cal.App.4th 1254, 1259–1261.) Findings may be implied rather than explicit, and a reviewing court "will infer a necessary finding provided the implicit finding is supported by substantial evidence. [Citations.]" (*Id.* at p. 1260.)

"The gravity of the problem that led to the dependency . . . is relevant to the question of best interest. [Citation.]" (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66.) Here, the court considered the specific acts of abuse and the circumstances under which

12

the abuse was inflicted. (§361.5, subd. (i)(1), (2).) The court noted that B.S. was "abused, assaulted, tortured in two separate households" by Mother and Father or Father's relatives. The court considered the severity of the emotional trauma suffered by B.S., finding that this was the worst thing it could imagine for a child. (§ 361.5, subd. (i)(3).) The court found B.S. would not benefit from reunification services because his treatment by both parents amounted to severe physical abuse as well as cruelty. The court relied on the agency reports which included the police reports and medical records to support its conclusion.

Given the severe abuse suffered by B.S. at the hands of both his parents, the juvenile court did not abuse its discretion in finding that reunification was not in the child's best interest. Further as respondent contends, even if the court erred in ordering the bypass of services under section 361.5, subdivision (b)(6), it properly found severe abuse by clear and convincing evidence and denied reunification services under section 361.5, subdivision (b)(5).

## IV.
## DISPOSITION

The petition for writ of mandate is denied on the merits. (§ 366.26, subd. (*l*)(1)(c); Cal. Rules of Court, rule 8.452.) The request for a stay is denied. Our decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

 

 

 

 

                                         _____

                                         RUVOLO, P. J.

We concur:

_____

REARDON, J.

_____

STREETER, J.

A146782, *In re B.S.*